[20 NE3d 264, 995 NYS2d 534]

In re THELEN LLP.

YANN GERON, as Chapter 7 Trustee of the Estate of THELEN LLP, Appellant, v SEYFARTH SHAW LLP, Respondent.

In re COUDERT BROTHERS LLP, Debtor. DEVELOPMENT SPECIALISTS, INC., Respondent-Appellant, K&L GATES LLP et al., Appellants-Respondents, AKIN GUMP STRAUSS HAUER & FELD LLP et al., Appellants-Respondents.

Argued June 4, 2014; decided July 1, 2014

**POINTS OF COUNSEL**

*Rich Michaelson Magaliff Moser, LLP*, New York City (*Howard P. Magaliff* of counsel), for appellant in the first above-entitled proceeding. Hourly fee matters are partnership property under New York law. (*Ederer v Gursky*, 9 NY3d 514; *Reiner v North Am. Newspaper Alliance*, 259 NY 250; *Matter of Daim-lerChrysler Corp. v Spitzer*, 7 NY3d 653; *Patrolmen's Benevolent Assn. of City of N.Y. v City of New York*, 41 NY2d 205; *Kabir v County of Monroe*, 16 NY3d 217; *Eaton v New York City Conciliation & Appeals Bd.*, 56 NY2d 340; *Farrington v Pinckney*, 1 NY2d 74; *Adler v Deegan*, 251 NY 467; *Paterson v University of State of N.Y.*, 14 NY2d 432; *Maresca v Cuomo*, 64 NY2d 242.)

*Thompson Hine LLP*, Cleveland, Ohio (*Michael R. Levinson* and *Thomas L. Feher* of counsel), and *Seyfarth Shaw LLP*, Chicago, Illinois (*Lori L. Roeser* and *M. Ryan Pinkston* of counsel), for respondent in the first above-entitled proceeding. I. Law firms do not own client matters, regardless of how such

matters are billed. (*International News Service v Associated Press*, 248 US 215; *Verizon New England Inc. v Transcom Enhanced Servs., Inc.*, 21 NY3d 66; *Matter of Cooperman*, 83 NY2d 465; *Demov, Morris, Levin & Shein v Glantz*, 53 NY2d 553; *Stem v Warren*, 227 NY 538; *People v Ryan*, 274 NY 149; *Braschi v Stahl Assoc. Co.*, 74 NY2d 201; *Sheresky v Sheresky Aronson Mayefsky & Sloan, LLP*, 35 Misc 3d 1201[A], 2011 NY Slip Op 52504[U]; *McDonald v Fenzel*, 233 AD2d 219; *Shandell v Katz*, 217 AD2d 472.) II. The Court need not answer the second certified question, but to the extent it chooses to do so, the Court should define "client matter" narrowly and conclude that the law firm actually providing services is entitled to retain all fees generated by such services. (*Matter of Cooperman*, 83 NY2d 465; *Demov, Morris, Levin & Shein v Glantz*, 53 NY2d 553; *Kirsch v Leventhal*, 181 AD2d 222.)

*Miller & Wrubel P.C.*, New York City (*Joel M. Miller, S. Christopher Provenzano* and *Nicholas Cutaia* of counsel), for Dechert LLP, *Morrison & Foerster LLP* (*Brett H. Miller* of counsel) for Morrison & Foerster LLP, *K&L Gates LLP* (*Richard S. Miller* and *Brian D. Koosed* of counsel) for K&L Gates LLP, *Quinn Emanuel Urquhart & Sullivan LLP* (*Eric J. Emanuel, Susheel Kirpalani* and *Eric M. Kay* of counsel), for Akin Gump Strauss Hauer & Feld LLP, *Duane Morris LLP* (*Lawrence J. Kotler* of counsel) for Duane Morris LLP, *Dorsey & Whitney LLP*, Minneapolis, Minnesota (*Patrick J. McLaughlin* of counsel), for Dorsey & Whitney LLP, *Arent Fox LLP* (*Allen G. Reiter* of counsel) for Arent Fox LLP, *Kramon & Graham, P.A.* (*James P. Ulwick*, of the District of the Maryland bar, admitted pro hac vice, and *Jean E. Lewis*, of the District of the Maryland bar, admitted pro hac vice, of counsel) and *Meister Seelig & Fein LLP*, New York City (*Jeffrey Schreiber* and *Howard Davis* of counsel), for DLA Piper LLP (US), and *Sheppard Mullin Richter & Hampton LLP* (*Daniel L. Brown* of counsel) for Sheppard Mullin Richter & Hampton LLP, appellants-respondents in the second above-entitled proceeding. I. The former client matters are not Coudert Brothers LLP's property. (*Sexter v Kimmelman, Sexter, Warmflash & Leitner*, 19 AD3d 298; *Murov v Ades*, 12 AD3d 654; *Shandell v Katz*, 217 AD2d 472; *Kirsch v Leventhal*, 181 AD2d 222; *Santalucia v Sebright Transp., Inc.*, 232 F3d 293; *Matter of Cohen v Grainger, Tesoriero & Bell*, 81 NY2d 655; *Cohen v Lord, Day & Lord*, 75 NY2d 95; *Denburg v Parker Chapin Flattau & Klimpl*, 82 NY2d 375; *Nixon Peabody LLP v de Senilhes, Valsamdidis, Amsallem, Jonath, Flaicher Associes*, 20 Misc 3d 1145[A], 2008 NY Slip Op 51885[U];

*Graubard Mollen Horowitz Pomeranz & Shapiro v Moskovitz*, 149 Misc 2d 481.) II. The law firms are entitled to retain their profits because those profits are attributable to their efforts, skill and diligence. (*Matter of Cooperman*, 83 NY2d 465; *Graubard Mollen Horowitz Pomeranz & Shapiro v Moskovitz*, 149 Misc 2d 481; *Denburg v Parker Chapin Flattau & Klimpl*, 82 NY2d 375; *Martin v Camp*, 219 NY 170; *Johnson v Ravitch*, 113 App Div 810; *Kirsch v Leventhal*, 181 AD2d 222.)

*Jones Day*, Washington, D.C. (*Shay Dvoretzky* of counsel), *Jones Day*, New York City (*Geoffrey S. Stewart* of counsel), and *Jones Day*, Atlanta, Georgia (*Jeffrey B. Ellman* of counsel), for Jones Day, appellant-respondent in the second above-entitled proceeding. I. Coudert Brothers LLP's retainer agreements did not give it any right to the matters at issue or to the profits from those matters. (*Campagnola v Mulholland, Minion & Roe*, 76 NY2d 38; *Demov, Morris, Levin & Shein v Glantz*, 53 NY2d 553; *Matter of Cooperman*, 83 NY2d 465; *Denburg v Parker Chapin Flattau & Klimpl*, 82 NY2d 375; *Cohen v Lord, Day & Lord*, 75 NY2d 95.) II. The duty among Coudert Brothers LLP partners to account for profits earned from partnership business did not give Coudert any right to profits earned from Jones Day's partnership business. (*Ederer v Gursky*, 9 NY3d 514; *Denver v Roane*, 99 US 355; *Consaul v Cummings*, 222 US 262; *King v Leighton*, 100 NY 386; *Stem v Warren*, 227 NY 538; *Meinhard v Salmon*, 249 NY 458; *Simonds v Simonds*, 45 NY2d 233; *Santalucia v Sebright Transp., Inc.*, 232 F3d 293; *Vollgraff v Block*, 117 Misc 2d 489.) III. Development Specialists, Inc.'s approach would produce inequitable results, conflict with the public policy of client choice, and destabilize law firms. (*Matter of Cooperman*, 83 NY2d 465; *Campagnola v Mulholland, Minion & Roe*, 76 NY2d 38; *Denburg v Parker Chapin Flattau & Klimpl*, 82 NY2d 375.)

*McCarter & English, LLP*, New York City (*David J. Adler, Joseph R. Scholz* and *Eduardo Glas* of counsel), for respondent-appellant in the second above-entitled proceeding. I. The client matters are partnership property of Coudert Brothers LLP. (*Stem v Warren*, 185 App Div 823; *DelCasino v Koeppel*, 207 AD2d 374; *Rhein v Peeso*, 194 App Div 274; *Dwyer v Nicholson*, 89 AD2d 597; *Kirsch v Leventhal*, 181 AD2d 222; *Shandell v Katz*, 217 AD2d 472; *Murov v Ades*, 12 AD3d 654; *Grant v Heit*, 263 AD2d 388; *McDonald v Fenzel*, 233 AD2d 219.) II. Decisions from other Uniform Partnership Law jurisdictions consistently reach the same result on the issue before the court. (*Robinson v*

*Nussbaum*, 11 F Supp 2d 1; *Sufrin v Hosier*, 896 F Supp 766; *Kirsch v Leventhal*, 181 AD2d 222; *Dwyer v Nicholson*, 89 AD2d 597.) III. The trial court decisions in *Sheresky v Sheresky Aronson Mayefsky & Sloan, LLP* (35 Misc 3d 1201[A], 2011 NY Slip Op 52504[U] [2011]) and *Burke v Clifton, Budd & DeMaria* (Sup Ct, NY County, index No. 1454/1991) are misplaced. IV. Application of the Partnership Law to the client matters is consistent with New York law and policy concerning the attorney-client relationship. (*Matter of Greene*, 54 NY2d 118; *Cohen v Lord, Day & Lord*, 75 NY2d 95; *Denburg v Parker Chapin Flattau & Klimpl*, 82 NY2d 375; *Messersmith v American Fid. Co.*, 232 NY 161; *Nishman v De Marco*, 62 NY2d 926; *Scholastic, Inc. v Harris*, 259 F3d 73; *Sufrin v Hosier*, 896 F Supp 766; *Santalucia v Sebright Transp., Inc.*, 232 F3d 293; *Martin v Curran*, 303 NY 276.) V. In a dissolution and liquidation, the no-compensation rule applies. (*Stem v Warren*, 185 App Div 823; *King v Leighton*, 100 NY 386; *Kirsch v Leventhal*, 181 AD2d 222; *Shandell v Katz*, 217 AD2d 472.)

*Kaye Scholer LLP*, New York City (*James M. Catterson* and *Margaret A. Rogers* of counsel), *DLA Piper LLP (US) (Joshua S. Sprague* of counsel), *Hogan Lovells US LLP (Scott W. Reynolds* of counsel), *Mayer Brown LLP (Michael O. Ware* of counsel), *Schulte Roth & Zabel LLP (Michael L. Cook* and *David M. Hillman* of counsel), *Drinker Biddle & Reath LLP (Michael P. Pompeo* of counsel), *Holland & Knight LLP (Barbara R. Parlin* of counsel), *Proskauer Rose LLP (Steven E. Obus* of counsel), *Sutherland Asbill & Brennan LLP (Robert D. Owen* of counsel), *Venable LLP (Lawrence H. Cooke II* of counsel), *Weil, Gotshal & Manges LLP (Mindy J. Spector* and *Michael F. Walsh* of counsel), and *Willkie Farr & Gallagher LLP (John C. Longmire* and *Stephen Greiner* of counsel), amici curiae in the first above-entitled proceeding. I. From the beginning of the common law clients have had the unfettered right to choose their counsel. (*Cohen v Lord, Day & Lord*, 75 NY2d 95; *Denburg v Parker Chapin Flattau & Klimpl*, 82 NY2d 375; *Tenney v Berger*, 93 NY 524; *Matter of Dunn [Brackett]*, 205 NY 398; *Martin v Camp*, 219 NY 170; *Gelder Med. Group v Webber*, 41 NY2d 680; *Matter of Cooperman*, 83 NY2d 465; *Demov, Morris, Levin & Shein v Glantz*, 53 NY2d 553; *Missan v Schoenfeld*, 111 Misc 2d 1022; *Judge v Bartlett, Pontiff, Stewart & Rhodes*, 197 AD2d 148.) II. The trustee's application of the unfinished business rule to hourly fee matters infringes on the client's right to choose his counsel. (*Neal v Ecolab, Inc.*, 252 AD2d 716; *Perkins v Elbilia*, 90 AD3d 543; *J.G. Wentworth S.S.C. Ltd. Partnership v Serio*,

33 AD3d 761; *Stem v Warren*, 227 NY 538; *Tenney v Berger*, 93 NY 524; *Demov, Morris, Levin & Shein v Glantz*, 53 NY2d 553.) III. Prohibiting Thelen LLP from obtaining profits earned by the firms is consistent with application of the unfinished business rule to contingent fee matters. (*In re Snyder*, 190 NY 66; *King v Fox*, 7 NY3d 181; *Shandell v Katz*, 217 AD2d 472; *Kirsch v Leventhal*, 181 AD2d 222; *Sexter v Kimmelman, Sexter, Warmflash & Leitner*, 19 AD3d 298; *Fischer-Hansen v Brooklyn Hgts. R.R. Co.*, 173 NY 492.)

*Diamond McCarthy LLP*, New York City (*Allen B. Diamond, Howard Ressler* and *Andrew B. Ryan* of counsel), for Alan M. Jacobs, Liquidating Trustee for Dewey & LeBoef Liquidation Trust, *Diamond McCarthy LLP*, Dallas, Texas (*Andrew B. Ryan, James D. Sheppard* and *Michael Fishel* of counsel), for Allan B. Diamond, Chapter 11 Trustee for Howrey LLP, and *Greenfield Sullivan*, San Francisco, California (*Christopher D. Sullivan* of counsel), for Michael Burkhart, Plan Administrator for Heller Ehrman LLP Liquidating Trust, amici curiae in the first above-entitled proceeding. I. A defunct law firm's pending client matters constitute the firm's unfinished business, entitling the defunct law firm to the profits earned from the completion of those client matters. (*King v Leighton*, 100 NY 386; *Stem v Warren*, 227 NY 538; *Rhein v Peeso*, 194 App Div 274; *Denver v Roane*, 99 US 355; *New York v O'Neill*, 359 US 1; *Ueland v United States*, 291 F3d 993; *Robinson v Nussbaum*, 11 F Supp 2d 1; *Kirsch v Leventhal*, 181 AD2d 222; *Shandell v Katz*, 217 AD2d 472; *Santalucia v Sebright Transp., Inc.*, 232 F3d 293.) II. Under the no compensation rule, the new law firm cannot retain any of the profits derived from completing the old firm's unfinished business. (*Denver v Roane*, 99 US 355; *King v Leighton*, 100 NY 386; *Rhein v Peeso*, 194 App Div 274; *Kirsch v Leventhal*, 181 AD2d 222; *Shandell v Katz*, 217 AD2d 472; *Santalucia v Sebright Transp., Inc.*, 232 F3d 293.)

*Glenn Lau-Kee, New York State Bar Association*, Albany, *Damian Schaible, The Association of the Bar of the City of New York*, New York City, and *Barbara Moses, New York County Lawyers' Association*, for New York State Bar Association and others, amici curiae in the first and second above-entitled proceedings. I. Applying the unfinished business doctrine to hourly fee matters conflicts with established New York law regarding the application of that doctrine to contingency fee matters. (*Grant v Heit*, 263 AD2d 388; *Kirsch v Leventhal*, 181 AD2d 222; *Musso v Ostashko*, 468 F3d 99; *In re Mid-Island Hosp., Inc.*, 276 F3d

123; *Santalucia v Sebright Transp., Inc.*, 232 F3d 293; *Shandell v Katz*, 217 AD2d 472; *Shiboleth v Yerushalmi*, 58 AD3d 407; *Murov v Ades*, 12 AD3d 654; *Liddle, Robinson & Shoemaker v Shoemaker*, 304 AD2d 436; *Lai Ling Cheng v Modansky Leasing Co.*, 73 NY2d 454.) II. Applying the unfinished business doctrine to hourly fee matters conflicts with basic principles that govern the attorney-client relationship under New York law and the Rules of Professional Conduct (22 NYCRR 1200.0). (*Demov, Morris, Levin & Shein v Glantz*, 53 NY2d 553; *Campagnola v Mulholland, Minion & Roe*, 76 NY2d 38; *Shaw v Manufacturers Hanover Trust Co.*, 68 NY2d 172; *Teichner v W & J Holsteins*, 64 NY2d 977, 70 NY2d 606; *Crowley v Wolf*, 281 NY 59; *Martin v Camp*, 219 NY 170, 221 NY 631; *Cohen v Lord, Day & Lord*, 75 NY2d 95; *Stem v Warren*, 227 NY 538; *Denburg v Parker Chapin Flattau & Klimpl*, 82 NY2d 375.)

*Keker & Van Nest LLP*, San Francisco, California (*Steven A. Hirsch* and *John C. Bostic* of counsel), and *Lawrence E. Zabinski*, Chicago, Illinois, and *Daniel J. Donnelly*, for Attorneys' Liability Assurance Society, Inc., amicus curiae in the first and second above-entitled proceedings. I. Treating hourly work as unfinished business violates best law-firm practices, harming clients and attorneys alike. II. Attempts to apportion profits on hourly unfinished business inevitably lead to absurd results. (*In re Taylor*, 599 F3d 880.) III. Hourly-billed client matters are not law-firm "property." (*Demov, Morris, Levin & Shein v Glantz*, 53 NY2d 553; *Kaiser Aetna v United States*, 444 US 164; *Cohen v Lord, Day & Lord*, 75 NY2d 95; *Shandell v Katz*, 217 AD2d 472; *Sheresky v Sheresky Aronson Mayefsky & Sloan, LLP*, 35 Misc 3d 1201[A], 2011 NY Slip Op 52504[U].)

### OPINION OF THE COURT

READ, J.

The United States Court of Appeals for the Second Circuit has asked us two questions relating to "whether, for purposes of administering [a] . . . related bankruptcy, New York law treats a dissolved law firm's pending hourly fee matters as its property" (*In re Thelen LLP*, 736 F3d 213, 216 [2d Cir 2013]). We hold that pending hourly fee matters are not partnership "property" or "unfinished business" within the meaning of New York's Partnership Law. A law firm does not own a client or an engagement, and is only entitled to be paid for services actually rendered.

## I.

### *Thelen*

On October 28, 2008, the partners of the law firm Thelen LLP (Thelen) voted to dissolve the firm, which was insolvent. In carrying out the dissolution, Thelen's partners adopted the Fourth Amended and Restated Limited Liability Partnership Agreement (Fourth Partnership Agreement) and a written Plan of Dissolution. The Fourth Partnership Agreement provided that it was governed by California law and, unlike its predecessor agreements, included an "Unfinished Business Waiver." The waiver recited that

> "[n]either the Partners nor the Partnership shall have any claim or entitlement to clients, cases or matters ongoing at the time of the dissolution of the Partnership other than the entitlement for collection of amounts due for work performed by the Partners and other Partnership personnel prior to their departure from the Partnership. The provisions of this [section] are intended to expressly waive, opt out of and be in lieu of any rights any Partner or the Partnership may have to 'unfinished business' of the Partnership, as the term is defined in *Jewel v. Boxer,* 156 Cal.App.3d 171 [203 Cal Rptr 13] (Cal. App. 1 Dist. 1984), or as otherwise might be provided in the absence of this provision through the interpretation or application of the [California Uniform Partnership Act of 1994, as amended]."

This kind of waiver is referred to as a *"Jewel* Waiver," after *Jewel v Boxer* (156 Cal App 3d 171 [Cal Ct App 1984]), the intermediate appellate court case that inspired it. Applying the Uniform Partnership Act (UPA), the *Jewel* court held that, absent an agreement to the contrary, profits derived from a law firm's unfinished business are owed to the former partners in proportion to their partnership interests. The Thelen partnership adopted the waiver with the

> "hope that [it would] serve as an inducement to encourage Partners to move their clients to other law firms and to move Associates and Staff with them, the effect of which will be to reduce expenses to the Partnership, and to assure that client matters are attended to in the most efficient and effec-

tive manner possible, and to help ensure collection of existing accounts receivable and unbilled time with respect to such clients."

Following Thelen's dissolution, 11 Thelen partners joined Seyfarth Shaw LLP (Seyfarth)—10 in its New York office and one in California. The former Thelen partners transferred unfinished matters to Seyfarth, which billed clients for their services. On September 18, 2009, Thelen filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York.

After his appointment as the chapter 7 trustee of Thelen's bankruptcy estate, Yann Geron (Geron) commenced an adversary proceeding against Seyfarth in the United States District Court for the Southern District of New York. Geron sought to avoid the "Unfinished Business Waiver" as a constructive fraudulent transfer under 11 USC §§ 544 and 548 (a) (1) (B) and California state law, and to recover the value of Thelen's unfinished business for the benefit of the estate's creditors. On the assumption that pending hourly matters were among a law firm's assets, Geron argued that Thelen's partners fraudulently transferred those assets to individual partners without consideration when they adopted the "Unfinished Business Waiver" on the eve of dissolution.

Seyfarth moved for judgment on the pleadings, arguing that New York rather than California law defined whether it received any "property interest." In a decision dated September 4, 2012, the District Court Judge first agreed with Seyfarth that New York law governed. He then concluded that under New York law, the "unfinished business doctrine" does not apply to a dissolving law firm's pending hourly fee matters, and that a partnership does not retain any property interest in such matters upon the firm's dissolution. In the Judge's view, to rule otherwise would "conflict[ ] with New York's strong public policy in favor of client autonomy and attorney mobility" (*Geron v Robinson & Cole LLP*, 476 BR 732, 742-743 [SD NY 2012]); and "result in an unjust windfall for the Thelen estate, as 'compensating a former partner out of that fee would reduce the compensation of the attorneys performing the work'" (*id.* at 740, quoting *Sheresky v Sheresky Aronson Mayefsky & Sloan, LLP*, 35 Misc 3d 1201[A], 2011 NY Slip Op 52504[U], *6 [Sup Ct, NY County 2011]). He further observed that "[s]uch an expansion of the [unfinished business] doctrine would violate

New York's public policy against restrictions on the practice of law" and "clash directly with New York's Rules of Professional Conduct"; specifically, the rule generally forbidding fee splitting (*id.* at 740). Accordingly, the Judge granted Seyfarth's motion for judgment on the pleadings; he sua sponte certified his order for interlocutory appeal (*id.* at 745-746).

By decision dated November 15, 2013, the Second Circuit agreed with the District Court that New York law governed the parties' dispute, and asked us to answer two unresolved questions of New York law regarding the applicability and scope of the "unfinished business doctrine"; specifically,

> "Under New York law, is a client matter that is billed on an hourly basis the property of a law firm, such that, upon dissolution and in related bankruptcy proceedings, the law firm is entitled to the profit earned on such matters as the 'unfinished business' of the firm?

> "If so, how does New York law define a 'client matter' for purposes of the unfinished business doctrine and what proportion of the profit derived from an ongoing hourly matter may the new law firm retain?" (736 F3d at 225).

### *Coudert*

On August 16, 2005, the law firm Coudert Brothers LLP (Coudert) dissolved in accordance with the terms of its partnership agreement. That same day, the equity partners adopted a "Special Authorization," whereby the equity partners authorized

> "the Executive Board . . . to take such actions as it may deem necessary and appropriate, including, without limitation, the granting of waivers, notwithstanding any provisions to the contrary in the Partnership Agreement . . . , in order to:

> "a. . . . sell all or substantially all of the assets of . . . the Firm to other firms or service providers, in order to maximize the value of the Firm's assets and business;

> "b. wind down the business of the Firm with a view to continuing the provision of legal services to clients and the orderly transition of client matters

to other firms or service providers, in order to maximize the value of the Firm's assets and business to the extent practicable."

Coudert partners were subsequently hired by several different firms. As of the date of the firm's dissolution, there remained between Coudert and its clients partly performed contracts for the provision of legal services. When former Coudert partners joined other firms, those firms were retained by Coudert's former clients to conclude these unfinished legal matters. The client matters were completed by the new firms on an hourly basis, with only two exceptions.

In September 2006, Coudert filed for protection from its creditors pursuant to chapter 11 of the Bankruptcy Code. Developmental Specialists, Inc. (DSI), as administrator of Coudert's bankruptcy estate, brought 13 separate adversary proceedings against the firms that had hired the former Coudert partners. These lawsuits were premised on the unfinished business doctrine. More specifically, DSI argued that the defendant firms were liable to Coudert for any profits derived from completing the client matters that the former Coudert partners brought to those firms. The firms moved for summary judgment, arguing that the unfinished business doctrine did not apply to matters billed on an hourly basis. DSI cross-moved for a declaration that the unfinished client matters were Coudert's property on the day it dissolved.

In a decision dated May 24, 2012, the District Court denied the firms' motion for summary judgment and granted DSI's cross motion. The Judge agreed with DSI that

"[u]nder the Partnership Law, the Client Matters are presumed to be Coudert's assets on the Dissolution Date. While the Coudert Partnership Agreement could have provided otherwise, it does not; on the contrary, it confirms the statutory presumption, as does the text of the Special Authorization adopted by the partners who voted to dissolve the firm. In the absence of any evidence that Coudert's partners intended to exclude pending but uncompleted client representations from the firm's assets, DSI is entitled to a declaration that the Client Matters were Coudert assets on the Dissolution Date. Because they are Coudert assets, the Former Coudert Partners are obligated to account for any profits they earned while winding the Client Matters up at

the Firms" (*Development Specialists, Inc. v Akin Gump Strauss Hauer & Feld LLP*, 477 BR 318, 326 [SD NY 2012]).

Upon the District Court's certification, the law firms appealed. By order dated December 2, 2013, the Second Circuit certified the same two questions asked in *Thelen* (*In re Coudert Bros. LLP*, 2013 WL 9363394, 2013 US App LEXIS 26016).

## II.

### The Role of the Partnership Law

Geron and DSI (collectively, the trustees) base their claims principally on the unfinished business doctrine as originally articulated and applied by the *Jewel* court in the context of a law firm dissolution. The doctrine derives from an interpretation of various provisions of the Partnership Law; primarily, sections 12, 40 (6) (the so-called "no compensation" rule), 43 (1) (the so-called "duty to account") and 66 (1) (a).[1] The trustees also rely on Partnership Law § 4 (4), which directs that the statute "shall be so interpreted and construed as to effect its general purpose to make uniform the law of those states which enact it."

The legislature enacted the Partnership Law in 1919, thereby adopting the UPA, which was approved and recommended to the states by the Conference of Commissioners on Uniform State Laws in 1914. Prior to the Conference's approval and recommendation for adoption of the Revised Uniform Partnership Act in 1994, the UPA had been enacted in every state except

---

**1.** Section 12 (1) provides that "[a]ll property originally brought into the partnership stock or subsequently acquired, by purchase or otherwise, on account of the partnership is partnership property"; section 12 (2), that "[u]nless the contrary intention appears, property acquired with partnership funds is partnership property."

Section 40 (6) provides that "[n]o partner is entitled to remuneration for acting in the partnership business, except that a surviving partner is entitled to reasonable compensation for his services in winding up the partnership affairs."

Section 43 (1) specifies that "[e]very partner must account to the partnership for any benefit, and hold as trustee for it any profits derived by him without the consent of the other partners from any transaction connected with the formation, conduct, or liquidation of the partnership or from any use by him of its property."

Section 66 (1) (a) specifies that "[a]fter dissolution a partner can bind the partnership . . . [b]y any act appropriate for winding up partnership affairs or completing transactions unfinished at dissolution."

Louisiana. Generally speaking, the unfinished business doctrine provides that profits arising from work begun by former partners of dissolved law firms are a partnership asset that must be finished for the benefit of the dissolved partnership, absent an agreement to the contrary. The doctrine rests on the legal principle that because departing partners owe a fiduciary duty to the dissolved firm and their former partners to account for benefits obtained from use of partnership property in winding up the partnership's business, they may not be separately compensated. This rule has been applied by courts in other jurisdictions to both contingent and hourly matters.[2]

Importantly, though, the Partnership Law does not define property; rather, it supplies default rules for how a partnership upon dissolution *divides* property as elsewhere defined in state law. As a result, the Partnership Law itself has nothing to say about whether a law firm's "client matters" are partnership property. When discussing what constitutes "property," we have explained that the

> *"expectation of any continued or future business is too contingent in nature and speculative to create a present or future property interest*. Although property is often described as a 'bundle of rights,' or 'sticks,' with relational aspects . . . *the ability to terminate the relationship at any time without penalty . . . cannot support a finding that a transferrable property right existed"* (*Verizon New England Inc. v Transcom Enhanced Servs., Inc.*, 21 NY3d 66, 72 [2013] [emphases added]).

In New York, clients have always enjoyed the "unqualified right to terminate the attorney-client relationship at any time" without any obligation other than to compensate the attorney for "the fair and reasonable value of the *completed services*" (*Matter of Cooperman*, 83 NY2d 465, 473 [1994] [emphasis added]). In short, no law firm has a property interest in future hourly legal fees because they are "too contingent in nature and speculative to create a present or future property interest" (*Verizon New England*, 21 NY3d at 72), given the client's unfettered right to hire and fire counsel. Because client matters are not partnership property, the trustees' reliance on Partnership Law § 4 (4) is misplaced. As the District Court Judge in *Geron*

---

**2.** It is not entirely clear to what extent the post-dissolution attorney fees at issue in *Jewel* were for hourly or contingency fee matters.

pointed out, "[t]he purpose of [the] UPA is to harmonize partners' duties regarding partnership property, *not to delineate the scope of such property*" (*Geron*, 476 BR at 742 [emphasis added]).

### The Contingency Fee Cases

Moreover, contrary to the trustees' contentions, New York courts have never suggested that a law firm owns anything with respect to a client matter other than yet-unpaid compensation for legal services already provided. Appellate Division decisions dealing with unfinished business claims in the context of contingency fee arrangements uniformly conclude that the dissolved partnership is entitled only to the "value" of its services (*see Grant v Heit*, 263 AD2d 388, 389 [1st Dept 1999]; *Shandell v Katz*, 217 AD2d 472, 473 [1st Dept 1995]; *DelCasino v Koeppel*, 207 AD2d 374, 374 [2d Dept 1994]; *Dwyer v Nicholson*, 193 AD2d 70, 73 [2d Dept 1993]; *Kirsch v Leventhal*, 181 AD2d 222 [3d Dept 1992, Levine, J.]).

The Appellate Division has occasionally referred to a contingency fee case as an "asset" subject to distribution (*see e.g. Shandell*, 217 AD2d at 473; *Kirsch*, 181 AD2d at 225). But as then-Justice Levine stressed in *Kirsch*, a former partner "is only entitled to 'the *value* of his interest at the date of dissolution . . . with interest'" (*id.* at 226, quoting Partnership Law § 73; *see also Santalucia v Sebright Transp., Inc.*, 232 F3d 293, 298 [2d Cir 2000] ["(I)n a case where a lawyer departs from a dissolved partnership and takes with him a contingent fee case which he then litigates to settlement, the dissolved firm is entitled only to the value of the case at the date of dissolution, with interest. Stated conversely, the lawyer must remit to his former firm the settlement value, less that amount attributable to the lawyer's efforts after the firm's dissolution"], citing *Kirsch*, 181 AD2d at 225-226). The trustees have not cited any New York case in which the law firm was awarded the client matter itself, or any fee not earned by the law firm's own work. This is hardly surprising since, as already discussed, a client's legal matter belongs to the client, not the lawyer.

And notably, these cases have involved disputes between a dissolved partnership and a departing partner, not outside third parties. In this context, statements that contingency fee cases are "assets" of the partnership subject to distribution simply means that, as between the departing partner and the partnership, the partnership is entitled to an accounting for the value

of the cases as of the date of the dissolution. *Kirsch, Shandell* and other Appellate Division decisions involving contingency fee arrangements do not suggest that law firms own their clients' legal matters, or have a property interest in work performed by former partners at their new firms.

### Stem v Warren

The trustees rely heavily on our decision in *Stem v Warren* (227 NY 538 [1920]), as did the District Court Judge in *DSI*. But *Stem* involved claims for breach of fiduciary duty; we did not hold "that executory contracts to perform professional services are partnership assets unless a contrary intention appears" (*DSI*, 477 BR at 333), or define unfinished client engagements as partnership property.

In *Stem*, one architectural partnership (Reed & Stem) entered into an agreement with another architectural partnership (Warren & Wetmore) for the purpose of "secur[ing] a contract for architectural services in the construction of the Grand Central Station and buildings in connection therewith" (*Stem*, 227 NY at 542). The agreement stated that the partnerships would "share and share alike as firms and not as individuals the profits and losses" (*id.* at 543). On the same day, the joint venture entered into a separate contract with the railroad company agreeing, among other things, to jointly act as architects for the company. It was the clear intent of the parties that the contract was to be performed notwithstanding the death of Reed, the "executive head" of the joint venture, if this should occur; that is, the agreement between the partnerships contemplated that the joint venture would survive either partnership's dissolution and that the contract with the railroad company would be performed by the survivors.

The joint venture worked on the Grand Central Station project for over seven years before Reed died. The trial court found that, without consent from Reed's surviving partner or his estate, Wetmore sent the railroad company a proposed new contract that was, in substance, the same as the joint venture's existing contract, except that the partnership of Warren & Wetmore was named sole architect. The railroad company immediately terminated its contract with the joint venture and entered into the new, identical contract exclusively with Warren & Wetmore.

Stem, the surviving partner, filed suit to recover one half of the profits on two separate projects of the joint venture: the

work performed pursuant to the joint venture agreement and the contract with the railroad regarding Grand Central Station; and the work performed on what became the Biltmore Hotel, for which the joint venture had prepared preliminary plans prior to Reed's death. We determined that "the firm of Warren & Wetmore are to be held accountable to the plaintiff" for the profits from work on Grand Central Station (*id.* at 547), but denied Stem compensation from the Biltmore project for anything other than the value of the actual work performed (the preliminary plans) by the joint venture before the dissolution.

Thus, *Stem* is not a case that defines what makes up the partnership property or "assets"; it is a breach-of-fiduciary-duty case in which one joint venturer underhandedly cut a surviving joint venturer out of a contract expressly intended (including by the client) to survive dissolution. We specifically held that as a result of Wetmore's "breach of duty," Warren & Wetmore was liable to account to the joint venture for the usurped opportunity. We recited that the railroad contract was intended to survive Reed's death[3] and, from that, concluded that the surviving members of the joint venture had a duty to complete the contract for the joint venture's benefit. *Stem* does not hold that the joint venture "owned" the railroad contract to the exclusion of others; rather, we decided that Stem's former joint venturers (Warren & Wetmore) did not have the right to exclude him from the contract. Certainly, if the railroad had terminated its contract with the joint venture and hired a new, unrelated firm, nothing in *Stem* suggests that Stem could have pursued the new firm to recover a percentage of its profits.

### Public Policy Considerations

Treating a dissolved firm's pending hourly fee matters as partnership property, as the trustees urge, would have numerous perverse effects, and conflicts with basic principles that govern the attorney-client relationship under New York law and the Rules of Professional Conduct (22 NYCRR 1200.0). By allowing former partners of a dissolved firm to profit from work they do not perform, all at the expense of a former partner and his new firm, the trustees' approach creates an "unjust

---

**3.** By contrast, contracts between a law firm and a client cannot contemplate survival of the law firm's dissolution without impermissibly infringing the client's right to terminate an attorney at will (*see Demov, Morris, Levin & Shein v Glantz*, 53 NY2d 553, 556 [1981]).

windfall," as remarked upon by the District Court Judge in *Geron* (476 BR at 740).

Next, because the trustees disclaim any basis for recovery of profits from the pending client matters of a former partner who leaves a troubled law firm *before* dissolution, their approach would encourage partners to get out the door, with clients in tow, before it is too late, rather than remain and work to bolster the firm's prospects. Obviously, this run-on-the-bank mentality makes the turnaround of a struggling firm less likely.

And attorneys who wait too long are placed in a very difficult position. They might advise their clients that they can no longer afford to represent them, a major inconvenience for the clients and a practical restriction on a client's right to choose counsel. Or, more likely, these attorneys would simply find it difficult to secure a position in a new law firm because any profits from their work for existing clients would be due their old law firms, not their new employers.

The trustees answer that clients do not care whether they pay one law firm or another, so long as their legal affairs are handled properly, and that requiring law firms to forfeit the fees earned by their lawyers' efforts has no impact on attorneys or clients. We disagree for the reasons already mentioned. Additionally, clients might worry that their hourly fee matters are not getting as much attention as they deserve if the law firm is prevented from profiting from its work on them. The notion that law firms will hire departing partners or accept client engagements without the promise of compensation ignores common sense and marketplace imperatives. Followed to its logical conclusion, the trustees' approach would cause clients, lawyers and law firms to suffer, all without producing the desired financial rewards for the estates of bankrupt firms.

Ultimately, what the trustees ask us to endorse conflicts with New York's strong public policy encouraging client choice and, concomitantly, attorney mobility. In *Cohen v Lord, Day & Lord* (75 NY2d 95, 96 [1989]), the partnership agreement provided that a departing partner forfeited his right to departure compensation if he practiced law in competition with his former firm. The lower court held that the provision was a "valid . . . financial disincentive to competition and did not prevent plaintiff from practicing law in New York or in any other jurisdiction" (*id.* at 97 [internal quotation marks omitted]).

We reversed, holding that these financial penalties impermissibly interfered with clients' choice of counsel—i.e., "[t]he

forfeiture-for-competition provision would functionally and realistically discourage and foreclose a withdrawing partner from serving clients who might wish to continue to be represented by the withdrawing lawyer and would thus interfere with the client's choice of counsel" (*id.* at 98). In this regard, we quoted approvingly from an opinion of the New York County Lawyers' Association issued in 1943, which stressed that

> "[c]lients are not merchandise. Lawyers are not tradesmen. They have nothing to sell but personal service. An attempt, therefore, to barter in clients, would appear to be inconsistent with the best concepts of our professional status" (*id.* at 98; *see also Denburg v Parker Chapin Flattau & Klimpl*, 82 NY2d 375, 381 [1993] [finding unacceptable a provision in a partnership agreement that "improperly deter(red) competition and thus impinge(d) upon clients' choice of counsel" by creating an incentive for a partner changing firms to discourage a Parker Chapin client from coming along]).

Finally, the trustees seek to entice us to hold in their favor on the ground that a law firm may always avoid the unfinished business doctrine by placing a well-crafted *Jewel* waiver in the partnership agreement. This suggestion fails to consider the possibility that classifying clients' pending hourly fee matters as firm property may lead to untoward unintended consequences. For example, the trustees, as noted before, limit their sought-after recoveries to client matters that remain unresolved as of the date of a law firm's dissolution. As Seyfarth pointed out, though, if a client's pending matter is partnership property, why doesn't every lawyer whose clients follow him to a new firm breach fiduciary duties owed his former law firm and partners? In the end, the trustees' theory simply does not comport with our profession's traditions and the commercial realities of the practice of law today, a deficiency beyond the capacity of a *Jewel* waiver to cure.

Accordingly, the first certified question should be answered in the negative, and the second certified question should not be answered as it is unnecessary to do so.

Chief Judge LIPPMAN and Judges GRAFFEO, SMITH, PIGOTT, RIVERA and ABDUS-SALAAM concur.

34

In each case: Following certification of questions by the United States Court of Appeals for the Second Circuit and acceptance of the questions by this Court pursuant to section 500.27 of this Court's Rules of Practice, and after hearing argument by counsel for the parties and consideration of the briefs and the record submitted, first question answered in the negative and second question not answered as unnecessary.