| White v Vaccaro |
|:---:|
| 2025 NY Slip Op 30013(U) |
| January 2, 2025 |
| Supreme Court, New York County |
| Docket Number: Index No. 655386/2023 |
| Judge: Melissa A. Crane |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:     HON. MELISSA A. CRANE                    PART                    60M

                                            *Justice*

-----------------------------------------------------------------------X

ADAM D. WHITE, LAW OFFICE OF VACCARO & WHITE, LLP

                                            INDEX NO.          655386/2023

                                            MOTION DATE        11/03/2023

                            Plaintiff,      MOTION SEQ. NO.        001

                    - v -

STEPHEN VACCARO, STEVE VACCARO LAW, LLP,

                                            **DECISION + ORDER ON MOTION**

                            Defendant.

-----------------------------------------------------------------------X

The following e-filed documents, listed by NYSCEF document number (Motion 001) 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 24, 28, 29, 31, 47, 48, 49, 52, 53

were read on this motion to/for                    INJUNCTION/RESTRAINING ORDER          .

This case involves the dissolution of a two-person law firm partnership called the Law Office of Vaccaro and White LLP (VW) that was engaged in plaintiff's personal injury work on contingency. The parties worked together successfully for a number of years. However, at some point they had an extremely acrimonious falling out culminating in this action in November 2023. By this motion, plaintiff seeks injunctive relief to stop defendant from allegedly appropriating partnership assets and fees that continued to flow in from the cases each attorney serviced. In full, plaintiff seeks an injunction:

(1) expanding of the Court's Temporary Restraining Order to include all cases coming into the firm through its assets;
(2) directing the parties to hold <u>half</u> of any legal fees and expenses paid by the firm in trust for the other partner in all firm cases;
(3) directing the parties to submit and certify as accurate an accounting of all firm cases including legal and settlement status and amounts;
(4) compelling the parties to start to windup and settle all partnership obligations and contingency cases and account for and pay fees and expenses equally to the other partner now and going forward after dissolution;
(4) directing fees being held in escrow be distributed to each partner in accordance with the Partnership Contracts;
(5) permitting both partners unfettered access to the VW email account;

655386/2023  WHITE, ADAM D. ET AL vs. VACCARO, STEPHEN ET AL
Motion No. 001

Page 1 of 9

[* 1]

(6) requiring defendant to provide plaintiff mutual access to the firm's landing page;

(7) enjoining each partner from using material created for and used on the firm website and/or modifying the landing page to prioritize one partner's new contact information; and

(8) enjoining defendant from using language "We are now Vaccaro Law" on his website or other promotional material or correspondence.

This decision on the preliminary injunction follows an extensive hearing in July 2024 and post hearing briefing in which both parties asked the court to determine an allocation formula. However, since that time, plaintiff has filed a Note of Issue requesting a jury trial (*see* EDOC 58 dated 12/12/2024). Given that the relief plaintiff calls for in his complaint is overwhelmingly in equity, including winding up dissolution of the firm, an accounting, an order determining the shares of the company, and fee allocation, it is difficult to see what would remain for a jury to determine. Perhaps damages for breach of fiduciary duty?

This court already determined at the July hearing many of the questions endemic to this motion, a fact that plaintiff ignores in his post-trial briefing and its Note of Issue, perhaps because he did not care for the outcome. At the close of the hearing on July 17-18, 2024, the court made two pertinent factual findings. For the reasons discussed at pages 89-90 of the 7/18/2023 transcript (tr), the court found that the parties were partners with an agreement to split fees 50/50. The court also found that the Partnership was dissolved on March 16, 2023, because both parties acted as if they were dissolving and the evidence in the record showed activities consistent with winding down (*see* 7/18/2023 tr at 90). Both parties placed the issue of when the partnership dissolved squarely before the court. Plaintiff cannot now try for a second bite at the apple by asking for a jury to determine the same thing.

After making its factual findings, the court then listed the legal issues that stemmed from these findings so that the parties could educate the court in post hearing briefs. These issues

655386/2023   WHITE, ADAM D. ET AL vs. VACCARO, STEPHEN ET AL
Motion No.  001

Page 2 of 9

[* 2]

2 of 9

were: (1) whether a fiduciary duty continues after dissolution; (2) how to split the fees after the date of dissolution; (3) is there an agreement to split the fees post termination in the writings; and (4) is it equitable to use the case bucket pipeline that the parties had used previously (*id.* at 90-91). The court also specifically asked for an analysis of the line of cases emanating from *In re Thelen*, 24 NY3d 16 (2014) (*id.* at 74).

Plaintiff's brief would have been more helpful if it did not ignore the factual findings referred to above that this court already made on the record directly after the hearing. For example, the court already determined that the firm properly dissolved on March 16, 2023 in part through plaintiff's actions. However, plaintiff spends most of his brief arguing that the firm never dissolved or that the March 16, 2023 dissolution was wrongful.

This is incorrect. As the court found on the record, after defendant sent notice that he wanted out of the partnership, plaintiff acted consistent with the firm being in the winding up phase. Plaintiff's own exhibits are consistent with dissolution. For example, plaintiff's ex G, an email from White to Vaccaro, is entitled "Partnership Dissolution proposal from Adam." It discusses some practical ways to split office space and maintain adequate staffing needs "so we can move forward with wrapping up V&W and separating our practices." Prior to sending that email, on March 28 2023, White requested from Vaccaro "a proposal for dissolving the partnership." On March 29, 2023 Mr. White admitted the practices were already separate: "I can no longer see our sharing office space while running our own separate law practices" (Ex G pg. 0960). These statements are consistent with someone who was in the process of dissolving a law firm. Therefore, Plaintiff has not carried his burden to demonstrate that he acted other than in accordance with trying to dissolve the firm. Thus, the court was correct to rule that the firm dissolved as of March 16, 2023, because both sides were acting in accordance with the

655386/2023   WHITE, ADAM D. ET AL vs. VACCARO, STEPHEN ET AL
Motion No. 001

Page 3 of 9

3 of 9

[* 3]

supposition that they were winding down (*cf. Rosenblum v. Rosenblum,* 214 A.D.3d 440, 1st Dep't 2023 [no dissolution where plaintiff continued his active involvement in managing the LLCs]).

The court now moves on to the allocation issue which was the main purpose for the post hearing briefing. The Partnership Agreement provides that plaintiff and defendant each have a 50% stake in VW. However, the agreement does not provide for how to divide contingency fees that materialize post-termination.

Plaintiff contends that all future incoming contingency fees from any case that VW took up, during the time the parties were partners, should be divided 50/50 pursuant to each sides' partnership interest. Defendant propounds a much more complicated solution. According to defendant, fees realized from pre-termination engagements, that he names "Legacy Cases," must only reflect the value of the legal services VW performed pre-termination. In keeping with this analysis, defendant also argues that fees realized from post-termination engagements belong exclusively to whichever attorney the client actually retained.

Much to this court's surprise (the court had assumed a pending case was an asset of the partnership and therefore <u>any</u> incoming fees had to be split 50/50 in accordance with the partnership agreement), it is defendant's view that is in keeping with New York law. Under the seminal case of *In re Thelen LLP, 2*4 N.Y.3d 16, 29 (2014), the Court of Appeals said, in the context of contingency fees, a dissolved law firm's pending matters are <u>not</u> partnership "property" or "unfinished business" within the meaning of the Partnership Law, but rather belong to the client. The dissolved firm is only entitled to the value of the services it provided prior to dissolution. The court noted that "statements that contingency fee cases are 'assets' of the partnership subject to distribution simply means that, as between the departing partner and

655386/2023   WHITE, ADAM D. ET AL vs. VACCARO, STEPHEN ET AL
Motion No.  001

Page 4 of 9

the partnership, the partnership is entitled to an accounting for the value of the case at the date of dissolution" with interest (*In re Thelen LLP*, 24 N.Y.3d at 29–30). The value of the case to the Partnership is the equivalent of the value of the services provided (*id.* at 29; *see also Parker Waichman, LLP v. Mauro,* 215 A.D.3d 869, 873 [2nd Dep't 2023] [citing *In re Thelen*] [ "When there is a fee dispute between the current and discharged attorneys for the plaintiff in an action to which a contingent fee retainer agreement applies, '[t]he discharged attorney may elect to receive compensation immediately based on quantum meruit or on a contingent percentage fee based on his or her proportionate share of the work performed on the whole case.'"]). By this reasoning, a dissolved partnership has no claim for fees derived from cases that were opened <u>after</u> the partnership dissolved (*see Metzger v. Goldstein*, 139 A.D.3d 918, 921, 33 N.Y.S.3d 81, 84 [2nd Dep't 2016]).

This rule is not without its critics (*see LaFond v. Sweeney*, 343 P.3d 939, 951 [Co. 2015] [holding opposite to *Thelen's* holding that the contingency fee case is not partnership property: "upon dissolution, pending contingency fee cases are an LLC's business" and "absent an agreement to the contrary, all profits derived from winding up the LLC's business belong to the LLC to be distributed in accordance with the members' or managers' profit sharing agreement"]). The reasons for a contrary rule make sense (*see Horner v. Bagnell*, 154 A.3d 975, 986–87 [Conn. 2017] ["application of this rule has the salutary effect of "prevent[ing] partners from competing for the most remunerative cases during the life of the partnership in anticipation that they might retain those cases should the partnership dissolve. It also discourages former partners from scrambling to take physical possession of files and seeking personal gain by soliciting a firm's existing clients upon dissolution"]). Scrambling to take physical possession is precisely what occurred here and has contributed to the extreme acrimony between the parties.

655386/2023   WHITE, ADAM D. ET AL vs. VACCARO, STEPHEN ET AL
Motion No.  001

Page 5 of 9

[* 5]

In light of these concerns, this court does not understand why completing the executory contingency fee contract is not part of winding up the firm's business, such that fees therefrom should be split according to the partnership agreement. This approach also encourages parties to abide by their fiduciary duties. However, the *Thelan* court has seen fit to approach this problem differently. Until it is overturned, this court is constrained to follow it.

Thus, VW is entitled to an accounting for the value of pending cases (in this context the value of the particular attorney's services) at the date of dissolution. Under the circumstances here, although there are two partners each of whom hold a 50% share, the partnership is only entitled to the reasonable value of services rendered once the contingency fee comes in. That reasonable value, once assessed, will be then be split 50/50 according to the partnership agreement.

Accordingly, several aspects of the relief for which plaintiff seeks a preliminary injunction must be denied, because plaintiff has no likelihood of success on the merits given the law in New York. The court will take each request up individually.

- (1) expanding of the Court's Temporary Restraining Order to include all cases coming into the firm through its assets:

As the cases are not firm assets per the reasoning in *Thelan*, this aspect of relief requested is denied.

- (2) directing the parties to hold <u>half</u> of any legal fees and expenses paid by the firm in trust for the other partner in all firm cases:

It is unclear at this juncture what plaintiffs' quantum meruit amount would be worth. It could be half, it could be more, it could be less. Thus, although plaintiff as a matter of law is not entitled to half the fees, as a practical matter, the assessment of reasonable value of services may turn out this way. Therefore, the court will continue the

655386/2023   WHITE, ADAM D. ET AL vs. VACCARO, STEPHEN ET AL
Motion No. 001

Page 6 of 9

6 of 9

[* 6]

injunction that each side must hold half the legal fees and expenses in trust for the other

pending the outcome of an inquest.

- (3) directing the parties to submit and certify as accurate an accounting of all firm cases including legal and settlement status and amounts:

This issue appears to be moot as plaintiff has filed a NOI.

- (4) compelling the parties to start to windup and settle all partnership obligations and contingency cases and account for and pay fees and expenses equally to the other partner now and going forward after dissolution:

To the extent that plaintiff seeks an accounting, that issue is covered under request

no. 3, to the extent this request seeks payment of half the fees, it is denied per *Thelen*.

- (5) directing fees being held in escrow be distributed to each partner in accordance with the Partnership Contracts:

Denied per the reasoning in *Thelen*.

Unlike the client cases themselves, the email account, website, etc. *are* firm

assets. Accordingly, plaintiff is likely to succeed on the merits that he should have equal

access to these items. Accordingly, to the extent not moot, the court orders that:

- (5) both partners should have unfettered access to the VW email account;

- (6) both parties should have mutual access to the firm's landing page, such that defendant is enjoined from blocking plaintiff's access;

- (7) an order enjoining each partner from using material created for and used on the firm website and/or modifying the landing page to prioritize one partner's new contact information.

To the extent plaintiff seeks an order enjoining each partner from using material created

for and used on the firm website and/or modifying the landing page to prioritize one

partner's new contact information, the court denies the motion. First, this contradicts

plaintiff's prior request that both parties have equal access. To the extent plaintiff wants

655386/2023   WHITE, ADAM D. ET AL vs. VACCARO, STEPHEN ET AL
Motion No. 001

Page 7 of 9

7 of 9

to put his new contact information on the website that he now should have access to, the court grants permission to do so as long as plaintiff does not take this as an opportunity to disparage defendant.

- (8) enjoining defendant from using language "We are now Vaccaro Law" on his website or other promotional material or correspondence.

The court grants this aspect of requested relief to the extent not moot. This statement implies that the name of the firm has merely changed, not that the partners have gone their separate ways. In the event a client wanted to work with White, they could be misled into assuming that only Vaccaro was still working.

The court, however, denies defendant's request to send the allocation of fees to a special referee. As defendant recognizes, this case has been unusually contentious. During the PI hearing, Mr. White was prone to outbursts. He would interrupt when his adversary or adversary's counsel was testifying (*see e.g.* EDOC 56 pgs 29-30.) He also used profane language (*see* EDOC 56, pg 27) and seemed incapable of controlling himself. He interrupted repeatedly (*see* EDOC 56, *passim*). Mr. White's aggressive behavior so alarmed the court officers that two officers, as opposed to the usual one, had to be present in the courtroom.

The last straw came when plaintiff interrupted defendant's testimony that was in answer to a question the court had posed. Due to the constant interruptions and belittling of defendant, the court had plaintiff ejected from the courtroom for the balance of defendant's redirect testimony (EDOC 56 Pg 74). As a result of the tensions between the parties, this is not an appropriate case for a special referee. The court will handle the inquest itself. In the interim, the court urges the parties to work out their own allocation pursuant to defendant's sensible suggestion that the parties use the "case bucket approach," that allocates contingency fees to

655386/2023   WHITE, ADAM D. ET AL vs. VACCARO, STEPHEN ET AL
Motion No. 001

Page 8 of 9

8 of 9

predecessor and successor counsel based on litigation milestones reached at the time of the

change of counsel, that the parties formerly agreed to use in their 2012 agreement.

The court has considered the parties' remaining contentions and finds them unavailing.

Accordingly, it is

ORDERED THAT the motion is granted in part and denied in part, as set forth in this decision; and it is further

ORDERED THAT the parties are to continue to hold half of any legal fees and expenses in trust for the other; and it is further

ORDERED THAT both partners should have equal access to: (1) the VW email account, (2) VW's landing page, and plaintiff can place his new contact information on that page, and (3) material on VW's website; and it is further

ORDERED THAT defendant is prohibited from using the phrase "We are now" in any promotional material, electronic or otherwise; and it is further

ORDERED THAT the parties are to attend a conference on January 7, 2025 at 11:00 am over Microsoft Teams to plan the inquest.

| 1/2/2025 | | | | |
|---|---|---|---|---|
| DATE | | | MELISSA A. CRANE, J.S.C. | |

| CHECK ONE: | | CASE DISPOSED | X | NON-FINAL DISPOSITION | |
|---|---|---|---|---|---|
| | | GRANTED | ☐ DENIED | X GRANTED IN PART | ☐ OTHER |
| APPLICATION: | | SETTLE ORDER | | SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | FIDUCIARY APPOINTMENT | REFERENCE |

655386/2023   WHITE, ADAM D. ET AL vs. VACCARO, STEPHEN ET AL
Motion No. 001

Page 9 of 9

9 of 9

[* 9]