Scott D. WINSTON and Guelzow & Winston, Ltd.,
Plaintiffs-Appellants,†

v.

Thomas K. GUELZOW and Guelzow Law Offices,
Ltd., Defendants-Respondents.

Court of Appeals

*No. 2013AP2764. Submitted on briefs June 10, 2014.
—Decided August 26, 2014.*

2014 WI App 96

(Also reported in 855 N.W.2d 432.)

† Petition for Review denied.

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Terry E. Johnson* and *Kevin M. Fetherston* of *Peterson, Johnson & Murray, S.C.*, Milwaukee.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Ward I. Richter* and *Sheila M. Sullivan* of *Bell, Moore & Richter, S.C.*, Madison.

Before Hoover, P.J., Stark, J., and Thomas Cane, Reserve Judge.

¶ 1. HOOVER, P.J. Scott Winston and Guelzow & Winston, Ltd. (Winston Law) appeal a money judgment obtained against Thomas Guelzow and Guelzow Law Offices, Ltd. (Guelzow Law). Winston argues that the court erroneously determined he was not entitled to a share of certain contingency fees obtained by Guelzow after the two terminated their joint law practice, and that the court erroneously failed to award prejudgment interest. We affirm.

## BACKGROUND

¶ 2. This case involves a fee dispute between two personal-injury attorneys who practiced together for several years and then parted ways. Guelzow hired Winston to work as an associate at Guelzow Law in Eau Claire in 2002. In 2005, Winston formed Winston Law, of which he was the sole owner. Guelzow remained the sole owner of Guelzow Law. However, the two firms jointly practiced law.

¶ 3. Guelzow and Winston had an operating agreement that was largely unwritten. The parties agreed the basic provisions of the agreement were: (1) Winston would provide the office space for the firms; (2) Winston would employ and pay the office staff; (3) Winston would front all costs and expenses associated with prosecuting personal-injury claims; (4) Guelzow's name would be used to attract clients; (5) Guelzow would remain in practice part time; and (6) after Winston was reimbursed for costs and expenses, contingency fees would be split evenly. New clients signed a standard contingency fee agreement, which indicated the clients were being represented by two separate law firms.

¶ 4. In March 2011, Guelzow decided the firms should separate. Winston accepted that decision and

mutually agreed the association was over. The thirteen remaining clients were sent a letter prepared by Winston explaining the firms were splitting up and clients had three choices for representation. The clients were told they could choose Winston, Guelzow, or some other attorney to continue the representation. The letter included a joint recommendation that the clients retain Guelzow for continued representation. The clients all chose Guelzow.

¶ 5. Guelzow took over the cases beginning April 1, 2011. Winston continued to assist Guelzow with cases through August 5. However, the circuit court found Winston's contributions were equivalent to those of an associate working under the direction of a senior attorney. Winston then took nearly four months off from the practice of law before joining a firm in Platteville, Wisconsin. Guelzow funded the ongoing case expenses and pursued the cases to resolution.

¶ 6. Guelzow and Winston had no contractual arrangement in place for dividing the contingency fee earnings after the firms separated. Guelzow reimbursed Winston as to each resolved matter for any costs Winston had advanced, in a total amount of approximately $469,000. Winston sued, seeking a share of the contingency fees earned on the cases continued from the joint practice. He argued Guelzow should first be paid on a quantum meruit basis for his work concluding the cases, but that the remainder of the clients' contingency fees should then be divided equally.

¶ 7. Following a bench trial, the court found Winston withdrew from representation of any of the mutual clients. The court concluded Winston was entitled only to quantum meruit compensation for his work on the cases at issue, but had failed to prove the amount of any damages on such a claim. Winston was awarded ap-

proximately $33,300 from one case where the fees were not disputed, $20,300 for office rent, and postjudgment interest. However, his damages were offset by $12,600 owed to Guelzow from a loan. Winston appeals.

## DISCUSSION

¶ 8. Winston argues the circuit court made errors of both fact and law when determining Winston was not entitled to a share of contingency fees. Findings of fact are reviewed under a clearly erroneous standard. *Noll v. Dimiceli's, Inc.*, 115 Wis. 2d 641, 643, 340 N.W.2d 575 (Ct. App. 1983). We review conclusions of law de novo. *Phelp s v. Physicians Ins. Co. of Wis.*, 2009 WI 74, ¶ 35, 319 Wis. 2d 1, 768 N.W.2d 615.

¶ 9. Winston primarily argues the circuit court erred by failing to apply *Tonn v. Reuter*, 6 Wis. 2d 498, 95 N.W.2d 261 (1959). Winston contends this case "is the controlling law in Wisconsin for purposes of determining the appropriate allocation of fees under circumstances involving successor counsel." We agree with the circuit court that *Tonn* is inapplicable because it addresses entirely different circumstances.

¶ 10. In *Tonn*, the plaintiff entered into a contingency fee agreement with counsel, who performed substantial work. *Id.* at 499–500. After being dissatisfied with the settlement offer obtained, Tonn terminated her counsel without cause. *Id.* at 500–01. After successor counsel obtained a settlement, the original firm sued Tonn to recover its entire contingency fee.

¶ 11. The supreme court adopted the rule that "where the attorney has been employed to perform specific legal services, his [or her] discharge, without cause or fault on his [or her] part before he [or she] has

753

fully performed the work he [or she] was employed to do, constitutes a breach of [the] contract of employment and makes the client liable to respond in damages." *Id.* at 503 (citations omitted). Further, the court held, "the proper measure of damages to apply in [such] a case . . . is the amount of the contingent fee based upon the amount of the settlement or judgment ultimately realized by the client, less a fair allowance for the services and expenses which would necessarily have been expended by the discharged attorney in performing the balance of the contract." *Id.* at 505. Thus, as we recently explained, "*Tonn* establishes the damages available to an attorney after a client breaches the contingency fee agreement by discharging the attorney without cause." *Lorge v. Rabl*, 2008 WI App 141, ¶ 23, 314 Wis. 2d 162, 758 N.W.2d 798. However, the court also explained that Tonn could be held to pay total attorney fees exceeding discharged counsel's contingency percentage, and that it was not resolving the amount of the fee due to successor counsel. *See Tonn*, 6 Wis. 2d at 506.

¶ 12. Winston contends "the question in *Tonn* was determining the appropriate allocation between original and successor counsel of the fees obtained." As explained, Winston is incorrect because the court explicitly stated it was not resolving the amount of fees payable to successor counsel. *Id.* Winston further asserts that, under *Tonn*, successor counsel may only be paid on a quantum meruit basis. Again, because *Tonn* did not reach the issue of successor counsel's pay, it cannot stand for the asserted proposition. Moreover, *Tonn* addressed a different fact scenario than that presented here. In *Tonn*, initial counsel was terminated by the client without cause, while here the court found Winston withdrew from representation.

¶ 13. Winston next argues the circuit court erred by applying *Hardison v. Weinshel*, 450 F.Supp. 721 (E.D. Wis. 1978). There, an attorney hired on a contingency fee basis withdrew because, among other things, he did not want to risk the possibility of unsuccessful litigation. *Id.* at 722. When the case was later resolved through the efforts of a successor attorney, the original attorney sought to enforce his rights to a contingency fee. The court observed:

> In 7 AM. JUR. 2D, Attorneys at Law § 221 (1963), entitled "Abandonment of Cause," it is stated that an attorney, who without justifiable cause, withdraws from a case before its termination loses all right to compensation for services rendered, as does an attorney who is engaged on a contingent fee basis and who fails to perform the contingency. On the other hand, the attorney may recover the reasonable value of services rendered where he [or she] withdraws with the client's consent.

*Id.* at 723. Further, in holding that the original attorney's withdrawal "nullified any claim arising under the retainer contract," *id.* at 722, the court explained:

> A contingency fee arrangement has an element of risk for any attorney who undertakes representation of a client and may ultimately be unrewarding even if the client is successful in his action, but it imposes on the attorney the duty to carry his [or her] client's claim through litigation, if necessary, and the Court believes that the attorney forfeits his [or her] right to recover under the arrangement if he [or she] declines to litigate an action because of expense or because he [or she] doubts the litigation will be successful.

*Id.* at 723.

¶ 14. Here, the circuit court found Winston withdrew from representation with his clients' permission. Applying *Hardison*, it therefore concluded Winston was entitled only to quantum meruit recovery for the value of the services provided before withdrawal. We see no error in the circuit court's application of *Hardison*. Indeed, it was consistent with another treatise, which provides: "An attorney retained on a contingent fee arrangement who withdraws from a case for good cause is entitled to compensation for the reasonable value of his services based upon quantum meruit, and not the contingent fee contract." GEORGE E. PALMER, THE LAW OF RESTITUTION, § 5.13(b), 812 (1978); *see also Diaz v. Attorney General of Tex as*, 827 S.W.2d 19, 22–23 (Tex. App. 1992) (where attorney and client assent to abandonment of the contract, the attorney may recover the reasonable value of the services rendered). In any event, Winston's only real challenge to the application of *Hardison* is his argument that the court erroneously found he had withdrawn from representation.[1]

¶ 15. We reject Winston's assertion that he did not withdraw from representing the parties' joint clients. Winston was financially unable to continue representing the clients and he jointly recommended that all clients choose Guelzow to continue their cases. Winston concedes the clients did not breach the retainer agree-

---

[1] Winston alternatively argues that the parties' combined firm never withdrew from representing the clients. Our analysis would be no different under that approach. The combined firm clearly withdrew from the original contingency agreements when it informed clients the two attorneys were parting ways and the clients could elect to continue their cases with either, or neither, of the attorneys.

ments. Accordingly, the circuit court reasonably concluded Winston withdrew from representation.

¶ 16. Winston also argues the circuit court erred by finding Guelzow did not breach the parties' operating agreement. Winston contends Guelzow breached the agreement to evenly split all contingency fees. We cannot agree. As the circuit court found, the parties' agreement did not address what would happen upon dissolution of the combined firm. Further, the agreement required Winston to advance costs and to work on the cases. Once Winston stopped performing under the contract, Guelzow had no contractual obligation to split contingency fees.

¶ 17. Finally, Winston argues the circuit court erroneously failed to award prejudgment interest under WIS. STAT. § 138.04.[2] Prejudgment interest may be awarded "only if the amount of damages is ascertainable or determinable prior to judicial determination, i.e., where there is a reasonably certain standard of measurement . . . ." *Klug & Smith Co. v. Sommer*, 83 Wis. 2d 378, 384, 265 N.W.2d 269 (1978). One way to determine whether the amount owed is easily ascertainable is whether the claim represents a genuine dispute. *Id.* at 385. "[A] substantial variance between the amount prayed for and the amount recovered is indicative of a genuine controversy and an unascertainable amount owed." *Id.*

¶ 18. Winston and Guelzow had one case in which the issue of fees was uncontested. In that case, Guelzow

---

[2] All references to the Wisconsin Statutes are to the 2011–12 version unless otherwise noted.

admitted shortly after the firms split that he owed Winston a fee of approximately $33,300. Winston seeks interest on that amount. However, there was no agreement between the parties on the fees for the other twelve or so cases in dispute, and Guelzow disputed Winston's claim for rent. Moreover, Guelzow was claiming entitlement to an offset for funds he had loaned Winston, and was, in fact, awarded such an offset. Because the total amount due Winston was genuinely in dispute, the court did not err by failing to award prejudgment interest. Furthermore, Winston cites no authority for his reply that partial prejudgment interest may be awarded based on limited amounts not in dispute. *See State v. Flynn*, 190 Wis. 2d 31, 39 n.2, 527 N.W.2d 343 (Ct. App. 1994) (arguments that are inadequately developed or not supported by legal authority will not be considered); *Charolais Breeding Ranches, Ltd. v. FPC Secs. Corp.*, 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct. App. 1979) (unrefuted arguments are deemed conceded).

*By the Court.*—Judgment affirmed.