******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STEPHEN P. HORNER *v.* JEFFREY S. BAGNELL
(SC 19700)

Rogers, C. J., and Palmer, Eveleigh, McDonald, Espinosa and Robinson, Js.

*Argued November 17, 2016—officially released March 7, 2017*

*Scott R. Lucas*, with whom was *Jeffrey S. Bagnell*, self-represented, for the appellant (defendant).

*Thomas B. Noonan*, for the appellee (plaintiff).

*Opinion*

ROBINSON, J. In this appeal, we consider whether an attorney, who represented clients in contingency fee matters that originated while he was a member of a two person law firm and continued to represent them after the dissolution of that firm, is obligated to share a portion of those fees with his former law partner when those fees were not paid until after the firm's dissolution. The defendant, Jeffrey S. Bagnell, appeals[1] from the judgment of the trial court, rendered after a court trial, awarding the plaintiff, Stephen P. Horner, damages in the amount of $116,298.89. On appeal, the defendant contends that the award, predicated on a theory of unjust enrichment, was improper because contingency fee matters are the property of the client, rather than the law firm, and the award violated the fee splitting provisions of rule 1.5 (e) of the Rules of Professional Conduct.[2] Guided by the commentary to rule 1.5 (e) and the well established line of authority following *Jewel* v. *Boxer*, 156 Cal. App. 3d 171, 203 Cal. Rptr. 13 (1984), we conclude that the trial court properly awarded the plaintiff a portion of the contingency fees that the defendant collected subsequent to the dissolution of the firm. Accordingly, we affirm the judgment of the trial court.

The record reveals the following facts, which were either undisputed or found by the trial court, and procedural history. In late 2003, the plaintiff and the defendant decided to start a law firm dedicated to the practice of labor and employment law. At that time, the plaintiff was an experienced solo practitioner and the defendant was a younger attorney looking to build a practice and advance his career. The parties entered into a partnership agreement in March, 2004. The partnership agreement provided that the defendant was a junior partner in the firm, in which the plaintiff served as managing partner.

With respect to the parties' compensation, the partnership agreement provided that, for the first year of the partnership, the plaintiff would bear 99 percent of the firm's total profits and losses, and the defendant 1 percent, with each partner being entitled to purchase additional interest in the partnership by paying a capital contribution of $5000 for each additional 1 percent interest. In addition to his 1 percent interest, the parties agreed in § 2.14 of the partnership agreement that the defendant, as a junior partner, was entitled to annual compensation in the amount of $110,000, plus bonus compensation that was based on the fees that he "generated" and were collected by the firm. Section 2.15 of the partnership agreement defined the term " 'fees generated' [to] include all hourly work performed for any client of the [p]artnership at the [p]artner's respective hourly rates," and further provided that "[w]ork performed on contingency cases shall be weighted in pro-

portion to the hourly rates of the [p]artners at the time a contingency fee is received."[3]

Ultimately, the law firm disappointed the parties' expectations.[4] They agreed to end the partnership effective December 31, 2006, and began to wind down the practice in October, 2006. Section 4.04 of the partnership agreement governed dissolution of the firm. Although the partnership agreement permitted the continuation of the partnership's business as "reasonably necessary to wind up the [p]artnership's affairs, discharge its obligations and preserve and distribute its assets," it was silent as to the allocation of fees collected after the dissolution of the firm.

The parties subsequently became embroiled in a dispute, documented in a series of e-mails, about the plaintiff's entitlement to portions of fees for certain litigation matters for the firm's former clients that were being handled exclusively by the defendant following the dissolution. Three of the disputed matters were contingency fee cases, and two were hourly fee cases. With respect to the hourly fee cases, the plaintiff claimed entitlement to 20 percent of the fees earned by the defendant for those two clients. With respect to the contingency fee cases, the plaintiff claimed entitlement to a pro rata share of the fees based on work involved in the firm's representation of the clients before dissolution, as opposed to the work performed exclusively by the defendant postdissolution.

The plaintiff brought this action against the defendant in a four count complaint claiming that the defendant's failure to pay him these fees and supply him with status reports and supporting documentation constituted, inter alia: (1) breach of contract, namely, a postdissolution fee sharing agreement alleged to have been acknowledged in several e-mails and memoranda between the parties during the dissolution process; (2) breach of the implied covenant of good faith and fair dealing; and (3) unjust enrichment.[5] With respect to unjust enrichment, the plaintiff alleged that the defendant benefited from cases that the plaintiff had referred to him pursuant to the fee sharing agreement, that the defendant "unjustly failed" to make payments due under that agreement to the plaintiff's detriment, and that the defendant would be unfairly enriched if he were permitted to avoid paying the plaintiff these fees, having received the benefits of those client referrals.

In his answer to the complaint, the defendant denied the allegations and interposed numerous special defenses, including that the plaintiff's claims were barred by the doctrine of illegality because the alleged fee sharing agreement violated rule 1.5 (e) of the Rules of Professional Conduct. The defendant also asserted a plethora of counterclaims against the plaintiff, which included a claim of unjust enrichment arising from the defendant's overpayment to the plaintiff of his share

of a contingency fee obtained after a postdissolution settlement in 2007. The present case was thereafter tried to the court, *Povodator, J.*[6]

The trial court issued a comprehensive memorandum of decision addressing all of the claims, counterclaims, and defenses. The trial court found for the defendant with respect to the plaintiff's contract based claims, including breach of the covenant of good faith and fair dealing, determining that the parties did not have an enforceable agreement with respect to postdissolution fee splitting. Specifically, the trial court concluded that: (1) without client consent, hourly fees generated after the dissolution belong to the attorney who earned them, rendering any agreement with respect to the hourly fees unenforceable under rule 1.5 (e) of the Rules of Professional Conduct;[7] and (2) there simply was no "meeting of the minds" with respect to sharing the contingency fees paid after dissolution because the parties disagreed, in the e-mail correspondence that the plaintiff claimed to constitute the fee sharing agreement, as to the essential terms of compensation. The court concluded that, in the absence of an enforceable agreement, "fees earned prior to dissolution presumptively are partnership property and presumptively are subject to the bonus calculation," and that "fees earned after the dissolution are the sole property of the defendant."

The trial court then addressed the unjust enrichment claim. The court found that "there was [no] unjust enrichment to [the] defendant" arising from the hourly fee cases because it was not inequitable for the defendant "to retain the full fruits of his labor" performed postdissolution given ethical guidance with respect to fee sharing from rule 1.5 (e) of the Rules of Professional Conduct and its commentary. The trial court concluded, however, that the plaintiff was entitled to recover on his claim of unjust enrichment with respect to the contingency fee cases because, under the partnership agreement, the "defendant had no direct claim to retain fees earned while a member of the partnership," with the bulk of the defendant's participation in the firm's profits being his bonus.[8] Turning to the damages, the trial court applied the methodology "implicitly" proposed by the defendant[9] and found that he owed the plaintiff $116,298.89. The trial court then rendered a judgment on the defendant's unjust enrichment counterclaim, which it described as nominal in nature. Specifically, the court found that, in connection with one of the matters on which the defendant had "devoted substantial time, personally, to the case" prior to dissolution of the firm, the plaintiff nevertheless had been unjustly enriched by $7607.67. The court ultimately found net damages due to the plaintiff in the amount of $108,691.22, with no interest awarded.

In connection with its denial of the plaintiff's motion

for reargument, the trial court rejected the defendant's claim that rule 1.5 (e) of the Rules of Professional Conduct barred its award of contingency fees earned and collected after dissolution to the plaintiff, specifying that its calculations were based on predissolution time "not subject to the rule . . . ." The court "emphasize[d] that it was not attempting to enforce the partnership agreement but rather [was] using the partnership agreement as a guide to determin[e] an equitable result with respect to claims of unjust enrichment in the context of fees [paid or payable] after the partnership ceased to exist." The court reiterated that, "unjust enrichment is not measured by detriment to a claimant but rather whether it is unjust for the one against whom a claim is made to retain the benefit received. The court previously noted that it would be an unjust windfall for [the] plaintiff to disregard the bonus formula as part of the winding up process; it would also be an unjust windfall for [the] defendant not to acknowledge that he did not have a direct claim against fees earned prior to dissolution, i.e., while the partnership existed." This appeal followed.

On appeal, the defendant contends that the trial court's unjust enrichment remedy, which ordered him to share with the plaintiff contingency fees that he received postdissolution, was improper under rule 1.5 (e) of the Rules of Professional Conduct because the clients had not consented to the fee sharing. Acknowledging that the commentary to rule 1.5 (e) allows the sharing of fees generated and earned during the existence of a partnership, the defendant relies on numerous cases, including *Geron* v. *Robinson & Cole, LLP*, 476 B.R. 732, 740–41 (S.D.N.Y. 2012), aff'd sub nom. *In re Thelen, LLP*, 762 F.3d 157 (2d Cir. 2014), *Hogan Lovells US, LLP* v. *Howrey, LLP*, 531 B.R. 814, 821 (N.D. Cal. 2015), appeal docketed, No. 15-16326 (9th Cir. July 1, 2015), *In re Thelen, LLP*, 24 N.Y.3d 16, 22, 20 N.E.3d 264, 995 N.Y.S.2d 534 (2014), and *Mager* v. *Bultena*, 797 A.2d 948, 958 (Pa. Super.), appeal denied, 572 Pa. 725, 814 A.2d 678 (2002), in support of the proposition that, consistent with rule 1.5 (e), a contingency case is not an asset owned by a firm until the fee is actually earned with a successful outcome. Thus, the defendant argues that the plaintiff had no interest in the fee once the firm's clients agreed to be represented by the defendant to the conclusion of their cases without consenting to fee sharing with the plaintiff. Citing *Winston* v. *Guelzow*, 356 Wis. 2d 748, 855 N.W.2d 432 (App.), review denied, 360 Wis. 2d 175, 857 N.W.2d 619 (2014), the defendant contends that, consistent with the withdrawal clause in the firm's retainer agreement,[10] the plaintiff's recovery lay with the firm's former clients, and was limited to the quantum meruit value of his work on the cases prior to the dissolution of the firm. The defendant argues that upholding the trial court's analysis "will put Connecticut in the untenable position

of holding that lawyers . . . can sell or transfer [contingency fee matters] to others as if they were commodities," in essence nullifying rule 1.5 (e) and fostering fee disputes, thus disincentivizing "successor counsel from accepting cases [that] have been worked on by prior attorneys . . . ."[11]

In response, the plaintiff argues that the unjust enrichment remedy imposed by the trial court was a proper exercise of its discretion, consistent with the commentary to rule 1.5 (e) of the Rules of Professional Conduct, because all of the damages awarded concerned legal work furnished by the plaintiff prior to dissolution of the firm. The plaintiff emphasizes that the defendant's arguments conflate ownership of the case with an interest in the legal work provided for the matter. The plaintiff further contends that the defendant's suggestion that the plaintiff pursue the former clients for relief "advocat[es] impermissible double dipping" by asking the clients to pay more than the agreed upon contingency percentage, given that the plaintiff's "interest in the contingency fee relates to his interest in the work done on the cases during the time of the partnership." To this end, the plaintiff posits that the mention of the retainer agreements is a "red herring" because they do not govern dissolution of the firm, and only concern voluntary withdrawal by the client. Finally, the plaintiff argues that the remedy imposed by the trial court was consistent with the case law on which the defendant relies. We agree with the plaintiff, and conclude that the trial court's unjust enrichment award was consistent with the law governing contingency fees received by attorneys subsequent to the dissolution of their law firms.

"We begin with an overview of general principles. [W]herever justice requires compensation to be given for property or services rendered under a contract, and no remedy is available by an action on the contract, restitution of the value of what has been given must be allowed. . . . Under such circumstances, the basis of the plaintiff's recovery is the unjust enrichment of the defendant. . . . A right of recovery under the doctrine of unjust enrichment is essentially equitable, its basis being that in a given situation it is contrary to equity and good conscience for one to retain a benefit which has come to him at the expense of another. . . . With no other test than what, under a given set of circumstances, is just or unjust, equitable or inequitable, conscionable or unconscionable, it becomes necessary in any case where the benefit of the doctrine is claimed, to examine the circumstances and the conduct of the parties and apply this standard. . . . Unjust enrichment is, consistent with the principles of equity, a broad and flexible remedy. . . . Plaintiffs seeking recovery for unjust enrichment must prove (1) that the defendants were benefited, (2) that the defendants unjustly did not pay the plaintiffs for the benefits, and

(3) that the failure of payment was to the plaintiffs' detriment. . . .

"This doctrine is based upon the principle that one should not be permitted unjustly to enrich himself at the expense of another but should be required to make restitution of or for property received, retained or appropriated. . . . The question is: Did [the party liable], to the detriment of someone else, obtain something of value to which [the party liable] was not entitled?"[12] (Citations omitted; internal quotation marks omitted.) *New Hartford* v. *Connecticut Resources Recovery Authority*, 291 Conn. 433, 451–52, 970 A.2d 592 (2009).

Although we ordinarily engage in a "deferential" review "of the trial court's conclusion that the defendant was unjustly enriched"; id., 452; a claim that the equitable remedy of unjust enrichment is unavailable as a matter of law raises a question of law subject to plenary review.[13] See *Schirmer* v. *Souza*, 126 Conn. App. 759, 763–65, 12 A.3d 1048 (2011) (applying plenary review to claim that lack of contractual relationship at any time between parties precluded award of damages for unjust enrichment); accord *Gagne* v. *Vaccaro*, 255 Conn. 390, 399–401, 766 A.2d 416 (2001) (reviewing directed verdict raising question whether first attorney could recover portion of contingency fee from successor attorney under unjust enrichment theory, despite fact that first attorney did not have written contingency fee agreement with client as required by General Statutes § 52-251c).

The defendant's claims regarding entitlement to contingency fees originating with a subsequently dissolved law firm present an issue of first impression for this court. We begin our analysis with rule 1.5 (e) of the Rules of Professional Conduct, on which the defendant relies for the proposition that the trial court's order of fee sharing as a remedy for unjust enrichment was barred as a matter of law. Rule 1.5 (e) provides: "A division of fee between lawyers who are not in the same firm may be made only if: (1) The client is advised in writing of the compensation sharing agreement and of the participation of all the lawyers involved, and does not object; and (2) The total fee is reasonable." Even if we assume that rule 1.5 (e) might provide a public policy basis for voiding the damages award in the present case,[14] the commentary suggests that the provision does not bar the plaintiff from accepting the award of damages as a matter of professional ethics, given the contingent nature of the fees at issue. Specifically, the commentary provides in relevant part that rule 1.5 (e) "does not prohibit or regulate divisions of fees to be received in the future for work done when lawyers were previously associated in a law firm." Rules of Professional Conduct 1.5 (e), commentary.

The ethical clarification provided by the commentary to rule 1.5 (e) of the Rules of Professional Conduct is

substantively consistent with the weight of authority nationally, which is derived from a partnership law concept commonly known as the unfinished business doctrine. The decision of the California Court of Appeals in *Jewel* v. *Boxer*, supra, 156 Cal. App. 3d 171, is widely considered to be the leading decision on point. The relevant case law holds that, in the absence of a contract between the partners providing to the contrary, a contingency fee matter pending at the time of dissolution is an asset of the partnership; the dissolved partnership is, therefore, entitled to share in the fee when it is paid to a former member of that partnership who has litigated the matter to completion.[15] See, e.g., *Jewel* v. *Boxer*, supra, 178–79; *LaFond* v. *Sweeney*, 343 P.3d 939, 946–47 (Colo. 2015); *Beckman* v. *Farmer*, 579 A.2d 618, 636 (D.C. 1990); *Ellerby* v. *Spiezer*, 138 Ill. App. 3d 77, 81–83, 485 N.E.2d 413 (1985); *Schrempp & Salerno* v. *Gross*, 247 Neb. 685, 693–95, 529 N.W.2d 764 (1995); *In re Thelen, LLP*, supra, 24 N.Y.3d 29–30; *Huber* v. *Etkin*, 58 A.3d 772, 780–82 (Pa. Super. 2012), appeal denied, 620 Pa. 709, 68 A.3d 909 (2013);[16] see also *Santalucia* v. *Sebright Transportation, Inc.*, 232 F.3d 293, 297–98 (2d Cir. 2000) (applying New York law); *Frates* v. *Nichols*, 167 So. 2d 77, 80 (Fla. App. 1964) (applying partnership principles to law firm dissolution); *Resnick* v. *Kaplan*, 49 Md. App. 499, 508–509, 434 A.2d 582 (1981) (same); accord *Vowell & Meelheim, P.C.* v. *Beddow, Erben & Bowen, P.A.*, 679 So. 2d 637, 640 (Ala. 1996) (applying rule to partners taking business with them when leaving intact law firm); but see *Welman* v. *Parker*, 328 S.W.3d 451, 456–58 (Mo. App. 2010) (rejecting majority rule as incompatible with prior state cases holding that discharged law firm is entitled only to quantum meruit for services already rendered, and criticizing it as limiting client's right to counsel of choice).

As described by the court in *Jewel*, the unfinished business doctrine derives from provisions of the Uniform Partnership Act, namely, that "a dissolved partnership continues until the winding up of unfinished partnership business," and that "[n]o partner (except a surviving partner) is entitled to extra compensation for services rendered in completing unfinished business."[17] *Jewel* v. *Boxer*, supra, 156 Cal. App. 3d 176. The court held that, "absent a contrary agreement, any income generated through the winding up of unfinished business is allocated to the former partners according to their respective interests in the partnership." Id. In deeming it irrelevant that the attorneys' clients had executed substitutions of counsel establishing that, moving forward, they would be represented only by specific former partners, the court emphasized that, "we must look to the circumstances existing on the date of dissolution of a partnership, not events occurring thereafter, to determine whether business is unfinished business of the dissolved partnership," and "[i]t is clear that a partner completing unfinished business cannot

cut off the rights of the other partners in the dissolved partnership by the tactic of entering into a new contract to complete such business. . . . Accordingly, the substitutions of attorneys here did not alter the character of the cases as unfinished business of the old firm. To hold otherwise would permit a former partner of a dissolved partnership to breach the fiduciary duty not to take any action with respect to unfinished partnership business for personal gain." (Citation omitted; internal quotation marks omitted.) Id., 178–79. Accordingly, the court held that the contingency fees should be "allocate[d] . . . to the former partners of the old firm in accordance with their respective percentage interests in the former partnership," with additional reimbursement allowed under the Uniform Partnership Act "for reasonable overhead expenses (excluding partners' salaries) attributable to the production of postdissolution partnership income . . . ."[18] Id., 180.

We observe that the unfinished business doctrine reflects practicalities attendant to contingency fee matters in particular. First, contingency fee agreements are executory in nature, with a fee not earned and due until the occurrence of the contingency, namely obtaining damages for the client via settlement or judgment; completing the executory contingency fee contract is part of winding up the firm's business. See, e.g., *LaFond* v. *Sweeney*, supra, 343 P.3d 946; *Bader* v. *Cox*, 701 S.W.2d 677, 682 (Tex. App. 1985); see also *McCullough* v. *Waterside Associates*, 102 Conn. App. 23, 30–31, 925 A.2d 352, cert. denied, 284 Conn. 905, 931 A.2d 264 (2007). It also reflects, for example, the fact that the attorney's former partners, through their work on the firm's other matters, may well have provided financial and other support allowing that attorney to handle contingency fee cases. See *Beckman* v. *Farmer*, supra, 579 A.2d 640 (concluding that there was "no inequity in the application of the [unfinished business] rule" when one attorney, who did not work on contingency matter after dissolution, testified that, before dissolution, "his work represented the firm's principal source of revenue and allowed [the departing partner] to concentrate on the as-yet unpaid" contingency matter); cf. *Jewel* v. *Boxer*, supra, 156 Cal. App. 3d 179 (The court rejected an argument that the unfinished business doctrine "will discourage continued representation of clients by the attorney of their choice" because "a portion of the income generated by such work . . . is all the former partners would have received had the partnership not dissolved. Additionally, the former partners will receive, in addition to their partnership portion of such income, their partnership share of income generated by the work of the other former partners, without performing any postdissolution work in those cases."). Finally, application of this rule has the salutary effect of "prevent[ing] partners from competing for the most remunerative cases during the life of the partnership in anticipation that they might

retain those cases should the partnership dissolve. It also discourages former partners from scrambling to take physical possession of files and seeking personal gain by soliciting a firm's existing clients upon dissolution." *Jewel* v. *Boxer*, supra, 179; see also, e.g., *LaFond* v. *Sweeney*, supra, 343 P.3d 948.

Moreover, consistent with the commentary to rule 1.5 (e) of the Rules of Professional Conduct, courts have rejected the argument that this application of the unfinished business doctrine with respect to contingency fee cases violates the right to counsel of choice, or is improper fee splitting without client consent, even when the client discharges the partnership and hires one of the partners individually to complete the representation.[19] These courts recognize that, although "a client has the right to discharge his attorney at will," those "clients of the partnership were free to be represented by any member of the dissolved partnership or by other attorneys of their choice. This right of the client is distinct from and does not conflict with the rights and duties of the partners between themselves with respect to profits from unfinished partnership business since, once the fee is paid to an attorney, it is of no concern to the client how the fee is distributed among the attorney and his partners. . . . This does not result in improper fee splitting . . . since . . . the partnership continues until the winding up of the partnership affairs has been completed, and it is perfectly proper for law partners to split fees among themselves." (Citation omitted.) *Ellerby* v. *Spiezer*, supra, 138 Ill. App. 3d 81; see also *Santalucia* v. *Sebright Transportation, Inc.*, supra, 232 F.3d 297 ("the original retainer agreement between [the client and the firm] simply is not relevant" to defining scope of fiduciary duty owed by lawyer to his former firm). Put differently, "the clients chose to work with an attorney who owed a continuing duty to his former partner. The client's choice did not alter that duty. The client originally signed a contingent fee agreement, agreeing that the client would receive a certain share of any award and that the attorney would receive the other. Generally, a fee agreement does not then proceed to detail how the attorney shares that fee within his or her firm; a client does not consider such information when choosing representation. The client was still getting what he or she bargained for: to wit, the chosen attorney and the same percentage of anything recovered in the litigation."[20] *Huber* v. *Etkin*, supra, 58 A.3d 781–82.

Finally, we disagree with the defendant's rather troubling argument that the plaintiff's proper remedy is to seek compensation quantum meruit from their firm's former clients for the services that he provided while the firm represented them. This is not a case about a client receiving the benefit of representation for which he unjustly has not paid, such as when a client takes a contingency fee matter from one attorney, who has

put a significant amount of work into the case, to another attorney who then collects the contingency fee after obtaining a judgment or settlement. See, e.g., *Cole* v. *Myers*, 128 Conn. 223, 230, 21 A.2d 396 (1941); cf. *Gagne* v. *Vaccaro*, supra, 255 Conn. 407–408 (first attorney's failure to have written contingency fee agreement with client, as required by § 52-251c and rule 1.5 [c] of the Rules of Professional Conduct, did not preclude that attorney from recovering quantum meruit from second attorney who litigated client matter to conclusion and collected contingency fee). Rather, the present case is about former law partners' fiduciary duty to account to each other and their obligations to their former law firm. Quantum meruit would be applicable only if the clients had elected to find a third party to represent them, rather than continue representation by the plaintiff or the defendant. See *Huber* v. *Etkin*, supra, 58 A.3d 781. Accordingly, we conclude that the trial court's award of damages under an unjust enrichment theory was not barred as a matter of law.[21]

The judgment is affirmed.

In this opinion the other justices concurred.

[1] The defendant appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[2] Rule 1.5 (e) of the Rules of Professional Conduct provides: "A division of fee between lawyers who are not in the same firm may be made only if: (1) The client is advised in writing of the compensation sharing agreement and of the participation of all the lawyers involved, and does not object; and (2) The total fee is reasonable."

[3] The partnership agreement provided an example to illustrate the allocation of contingency fees between the parties, stating that "if [the defendant] spent [ten] hours on a contingency matter yielding a $10,000 fee, and [the plaintiff] spent [five] hours on that matter, the formula for allocating the fee to each respective [p]artner would be as follows:

"a. [Ten] hours (67 [percent] of time) x $250 ([the defendant's] hourly rate) = [$2500];

"b. [Five] hours (33 [percent] of time) x $350 ([the plaintiff's] hourly rate) = [$1750];

"c. The total hourly fees of the [p]artners would be [$4250].

"[The defendant's] hourly fee in relation to the total hourly fees equals approximately 59 [percent] and [the plaintiff's] equals 41 [percent]. Therefore the $10,000 contingency fee would be allocated to each [p]artner's revenues in the following amounts: [$6000] to [the defendant] and [$4000] to [the plaintiff]."

[4] The disappointments were mutual. At the time they formed the partnership, the defendant expected that their practice would move from the plaintiff's home office to a commercial office space more suitable for a larger law firm. This move never happened, which was troubling to the defendant. First, local zoning regulations permitted only a sole proprietorship to operate from the plaintiff's residence, which precluded the firm from changing the sign on the property from that of the plaintiff's solo practice to the parties' partnership. Second, the defendant believed that the plaintiff's home office space, which was difficult to access, was not conducive to building his litigation practice, which required a conference space for depositions.

With respect to the plaintiff's expectations, the parties originally intended that the defendant would eventually buy the plaintiff's share of the firm, which would help the plaintiff fund his retirement while remaining affiliated with the firm. This plan did not come to fruition because a professional appraisal demonstrated that the law firm had "essentially no intrinsic value as a business" for purposes of a purchase. After the breakup of their firm, the plaintiff then went to work for another law firm in Fairfield county, frustrating the defendant, who had believed that the plaintiff planned to move out of the area.

[5] The plaintiff also claimed that the defendant's conduct constituted a violation of the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq. The trial court rejected this claim, which we need not consider further in this appeal.

[6] Prior to trial, the defendant moved for summary judgment, claiming that the plaintiff's claims were barred by rule 1.5 (e) of the Rules of Professional Conduct. The trial court, *Hon. Taggart D. Adams*, judge trial referee, denied the defendant's motion on the ground that the proscription of rule 1.5 (e) against fee splitting without client consent "does not apply to work and fees generated by lawyers while they were associated," and all four counts of the complaint "allege that certain fees are sought for work done while the two parties were partners . . . and also allege claims for fees earned while the parties were not associated." Judge Adams concluded that "the plaintiff is barred from asserting the latter claims by rule 1.5 (e) because there is no evidence of client consent for a fee sharing arrangement." Judge Adams further determined that "there are unresolved relevant and material fact questions" about the fees and the controlling agreement that precluded summary judgment. For the sake of clarity, we note that all references to the trial court hereinafter are to Judge Povodator.

[7] The trial court noted that the allocation of hourly fees earned prior to dissolution, regardless of whether collected prior to dissolution, would be governed by the partnership agreement. The trial court observed, however, that there were no fees identified to the court that would fit in this category.

[8] The trial court observed that "[t]he difference is that whereas under the contract claim he had an obligation to give to the partnership the full extent of fees earned prior to dissolution subject to his right to get some of that back as a bonus, on an unjust enrichment claim, he would be obligated to give [the] plaintiff the net amount due [to the] plaintiff i.e. the amount that would have been retained by the partnership under a contract theory, less any applicable adjustments."

[9] Crediting proposals set forth by the defendant during the parties' fee dispute, the trial court set forth the following formula to calculate the unjust enrichment damages in the contingency fee cases by: (1) determining "the percentage of total time devoted to the case that was expended during the life of the partnership"; (2) multiplying "the contingency fee earned on the case by that percentage"; (3) subtracting "from the amount of that fee presumptively earned during the life of the partnership, the amount of the bonus payable to [the] defendant based on the formula set forth in the partnership agreement"; and (4) "subtract[ing] an additional 1 [percent] from that balance" to credit the defendant "for his share of the assets of the partnership upon dissolution . . . ." The trial court observed that the defendant's proposed methodology differed from the plaintiff's because the plaintiff desired to treat the portion of fees earned during the partnership as his personal property, while the defendant desired to treat those fees as belonging to the partnership and subject to distribution in accordance with the partnership agreement.

[10] The withdrawal clause in the firm's retainer agreement provided in relevant part: "The Client may request that the [a]ttorney cease representing the [c]lient at any time prior to recovery or settlement. In that event, the attorney shall be entitled to compensation for all hours actually expended on the case at the [a]ttorney's prevailing rates at the time[s] services were rendered or, in the event that the matter has been substantially brought to resolution at the time of the [c]lient's request, and eventually results in a gross settlement or recovery through new representation, the [a]ttorney shall be entitled to a pro rata fee based on total numbers of hours of legal work performed on the case by the [a]ttorney as compared to the total number of hours performed on the case by new counsel."

[11] The defendant also contends, without providing us the benefit of adequate briefing, that the trial court lacked subject matter jurisdiction over this case because the plaintiff lacked standing to bring this case in his individual capacity, insofar as his claims were on behalf of the dissolved partnership. The defendant reemphasizes the standing claim in his reply brief, similarly without benefit of citations to statutory or case law governing an individual's standing to sue on behalf of a partnership. For his part, the plaintiff does not respond in his brief to this semblance of a jurisdictional claim. We cannot dispose of this issue via inadequate briefing rules; see, e.g., *Stuart* v. *Freiberg*, 316 Conn. 809, 831–32 n.17, 116 A.3d 1195 (2015); because the issue of standing implicates subject matter jurisdiction, and may be raised at any time, including by the court sua sponte. See, e.g., *Smith* v. *Snyder*, 267 Conn. 456, 460 and n.5, 839 A.2d 589 (2004). On the basis

of our independent research, we conclude that the plaintiff had standing to bring this action.

Our jurisdictional inquiry is further complicated by the fact that the record and briefs are inconsistent with respect to the organization of the parties' now dissolved partnership. The complaint alleges, and the answer admits, that the law firm was a limited liability company. Limited liability companies are governed by the provisions of the Limited Liability Company Act, General Statutes § 34-100 et seq., which "establishes the right to form [a limited liability company] and all of the rights and duties of the [limited liability company], as well as all of the rights and duties of members and assignees. It permits the members to supplement these statutory provisions by adopting an operating agreement to govern the [limited liability company's] affairs. . . . A limited liability company . . . is a hybrid business entity that offers all of its members limited liability as if they were shareholders of a corporation, but treats the entity and its members as a partnership for tax purposes." (Citation omitted; internal quotation marks omitted.) *Scarfo* v. *Snow*, 168 Conn. App. 482, 499, 146 A.3d 1006 (2016).

The parties do not, however, use the parlance of the Connecticut Limited Liability Company Act with respect to the firm, such as the use of an " '[o]perating agreement' " to govern their relationship; General Statutes § 34-101 (17); or the terms " '[m]ember" or " '[m]anager' " to describe their positions in the firm. See General Statutes § 34-101 (15) and (16); see also General Statutes § 34-140 (b) (describing purpose of operating agreement); General Statutes § 34-187 (describing member and manager rights to initiate civil actions). Instead, in their pleadings and briefs, they consistently refer to their law firm as a "partnership," and describe their business relationship in those terms, including the partnership agreement that governed their obligation to each other as law partners. Indeed, the only citation in the parties' briefs to *any* law governing business organizations is in a footnote in the defendant's reply brief, which contains an erroneous citation to a provision in the Connecticut Uniform Partnership Act, General Statutes § 34-300 et seq., for the proposition that the plaintiff should have brought this action on behalf of the partnership, which was not terminated upon dissolution but "continues after dissolution only for the purpose of winding up its business," and that a "partnership is terminated when the winding up of its business is completed." General Statutes § 34-373 (a); see also General Statutes § 34-375 ("a partnership is bound by a partner's act after dissolution that . . . [i]s appropriate for winding up the partnership business").

Despite the admitted allegation that the law firm was a limited liability company, we are satisfied for the limited purpose of the present appeal to accept the parties' representations and treat their relationship as governed by the Connecticut Uniform Partnership Act. Thus, we conclude that the plaintiff has standing under the Uniform Partnership Act to bring the action underlying this appeal. See General Statutes § 34-339 (b) (3) ("[a] partner may maintain an action against the partnership or another partner for legal or equitable relief, with or without an accounting as to partnership business, to . . . [e]nforce the rights and otherwise protect the interests of the partner, including rights and interests arising independently of the partnership relationship"); see also *Brennan* v. *Brennan Associates*, 293 Conn. 60, 91, 977 A.2d 107 (2009) (discussing relationship of statutory standing provisions under Connecticut Uniform Partnership Act). Accordingly, we reject the defendant's belated jurisdictional challenge in this case, while leaving to another day the significant standing issues present in civil actions between members of limited liability companies. See *Scarfo* v. *Snow*, supra, 168 Conn. App. 503–504; see also *Smith* v. *Snyder*, supra, 267 Conn. 460–62 (treating individual claims brought by members as requiring proof of injury separate and distinct from injury to limited liability company); *O'Reilly* v. *Valletta*, 139 Conn. App. 208, 214, 55 A.3d 583 (2012) ("[a] member or manager, however, may not sue in an individual capacity to recover for an injury based on a wrong to the limited liability company"), cert. denied, 308 Conn. 914, 61 A.3d 1101 (2013).

[12] "[T]he measure of damages in an unjust enrichment case ordinarily is not the loss to the plaintiff but the benefit to the defendant." *Hartford Whalers Hockey Club* v. *Uniroyal Goodrich Tire Co.*, 231 Conn. 276, 285, 649 A.2d 518 (1994). In determining the extent of the unjust benefit giving rise to the plaintiff's damages, the trial court may look to the terms of the contract between the parties, notwithstanding the fact that the contract does not provide a basis for relief, as "a fair and reasonable estimate of the benefit accorded to the defendants." Id.

[13] We note that the plaintiff contends that the proper standard of review

of the trial court's restitution award is for clear error or abuse of discretion. We disagree. Rather than attacking the trial court's factual findings or calculation of damages, we understand the defendant to claim that a finding of unjust enrichment is categorically barred by the law governing the dissolution of law firms, as informed by the public policy concerns reflected in rule 1.5 (e) of the Rules of Professional Conduct.

[14] The defendant's substantive reliance on rule 1.5 (e) of the Rules of Professional Conduct is, in any event, questionable, given that the "Rules of Professional Conduct caution those who seek to rely on their provisions" that "[t]hey 'provide a framework for the ethical practice of law. . . . Violation of a [r]ule should not give rise to a cause of action nor should it create any presumption that a legal duty has been breached. The [r]ules are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies. They are not designed to be a basis for civil liability. Furthermore, the purpose of the [r]ules can be subverted when they are invoked by opposing parties as procedural weapons. The fact that a [r]ule is a just basis for a lawyer's self-assessment, or for sanctioning a lawyer under the administration of a disciplinary authority, does not imply that an antagonist in a collateral proceeding or transaction has standing to seek enforcement of the [r]ule. Accordingly, nothing in the [r]ules should be deemed to augment any substantive legal duty of lawyers or the extra-disciplinary consequences of violating such a duty.' " *Gagne* v. *Vaccaro*, supra, 255 Conn. 403, quoting Rules of Professional Conduct (2001), scope, p.3.

[15] Although this principle has its roots in partnership law, we note that courts have deemed it applicable to other business organizations given the fiduciary duties owed by lawyers to other attorneys in the same firm, and to their clients. See, e.g., *Santalucia* v. *Sebright Transportation, Inc.*, 232 F.3d 293, 299–300 (2d Cir. 2000) (professional corporations); *LaFond* v. *Sweeney*, 343 P.3d 939, 945–46 (Colo. 2015) (limited liability companies).

[16] We note the defendant's reliance on *Mager* v. *Bultena*, supra, 797 A.2d 958, for the proposition that: "No Pennsylvania appellate court has ever awarded a proportionate share of a contingency fee to a firm discharged by the client well prior to the occurrence of the contingency, for the simple reason that a client may discharge an attorney at any time, for any reason. Once the contractual relationship has been severed, any recovery must necessarily be based on the work performed pursuant to the contract up to that point. Where the contingency has not occurred, the fee has not been earned." We disagree. First, *Mager* is distinguishable because it did not involve the dissolution of a law firm partnership, but rather, representation by an associate attorney who left his employment with the firm that had originated the matter. Id., 951. Second, the reliance that the defendant places on *Mager* is undercut by the Pennsylvania court's more recent en banc decision in *Huber* v. *Etkin*, supra, 58 A.3d 772, which is directly on point with respect to the dissolution of law firm partnerships.

[17] The Connecticut Uniform Partnership Act, which is based on the Revised Uniform Partnership Act, contains the former of these two provisions. See General Statutes § 34-373 (a) ("a partnership continues after dissolution only for the purpose of winding up its business"). We note, however, that the latter, also known as the "no compensation" provision, has been replaced in the Connecticut Uniform Partnership Act with the following language: "A partner is not entitled to remuneration for services performed for the partnership, except for reasonable compensation for services rendered in winding up the business of the partnership." General Statutes § 34-335 (h). Courts have recently questioned the effect of this change in the uniform partnership statutes on the continuing vitality of *Jewel*, and the United States Court of Appeals for the Ninth Circuit has sought guidance from the California Supreme Court on this point. See *In the Matter of Heller Ehrman, LLP*, 830 F.3d 964, 973 (9th Cir. 2016); see also footnote 19 of this opinion.

[18] The court in *Jewel* further emphasized that its holding was simply a default position that law partners could address by "includ[ing] in a written partnership agreement provisions for completion of unfinished business that ensure a degree of exactness and certainty unattainable by rules of general application." *Jewel* v. *Boxer*, supra, 156 Cal. App. 3d 179–80.

[19] We acknowledge the defendant's reliance on *Geron* v. *Robinson & Cole, LLP*, supra, 476 B.R. 732, *Hogan Lovells US, LLP* v. *Howrey, LLP*, supra, 531 B.R. 814, and *In re Thelen, LLP*, supra, 24 N.Y.3d 16, in support of the proposition that a dissolved law firm has no property interest in pending client matters because "clients have always enjoyed the unqualified right to terminate the attorney-client relationship at any time without any obligation

other than to compensate the attorney for the fair and reasonable value of the completed services . . . ." (Citation omitted; emphasis omitted; internal quotation marks omitted.) *In re Thelen, LLP*, supra, 24 N.Y.3d 28. These cases are distinguishable because they concern strictly hourly matters, and simply reflect the fact that courts have rebuffed efforts by bankruptcy trustees to seek a share of profits from hourly matters handled by former partners in bankrupt law firms after their move to new law firms. See *Hogan Lovells US, LLP* v. *Howrey, LLP*, supra, 825–26 (applying District of Columbia law); *Geron* v. *Robinson & Cole, LLP*, supra, 743 (applying New York law); *In re Thelen, LLP*, supra, 24 N.Y.3d 31–33 (same); see also *Heller Ehrman, LLP* v. *Davis, Wright, Tremaine, LLP*, 527 B.R. 24, 33 (N.D. Cal. 2014) (The court discussed the negative policy effects of "holding [that] would discourage third-party firms from hiring former partners of dissolved firms and discourage third-party firms from accepting new clients formerly represented by dissolved firms. It is not in the public interest to make it more difficult for partners leaving a struggling firm to find new employment, or to limit the representation choices a client has available, by establishing a rule that prevents third-party firms from earning a profit off of labor and capital investment they make in a matter previously handled by a dissolved firm.").

We note, however, that this issue remains somewhat unsettled, and may well receive some significant clarification in the near future. The United States Court of Appeals for the Ninth Circuit recently questioned the continuing vitality of *Jewel* v. *Boxer*, supra, 156 Cal. App. 3d 171, in light of subsequent changes to the Uniform Partnership Act replacing the "no compensation" rule with the "reasonable compensation rule" contained in the Revised Uniform Partnership Act. *In the Matter of Heller Ehrman, LLP*, 830 F.3d 964, 973 (9th Cir. 2016); see also *Geron* v. *Robinson & Cole, LLP*, supra, 476 B.R. 744–45 (questioning whether *Jewel* is applicable to hourly fee matters and positing that change in uniform partnership statutes from " 'no compensation' " to " 'reasonable compensation' " might have provided dissolved firm with some interest under California law in hourly fee matters handled by its partners who moved to new firms). The Ninth Circuit certified to the California Supreme Court the question of "whether a dissolved law firm has a property interest in unfinished business where the law firm had been retained on an hourly basis." *In the Matter of Heller Ehrman, LLP*, supra, 973; see id. (noting question of whether dissolution agreement was fraudulent transfer depended on answer to threshold question of whether law firm had property interest in unfinished hourly matters).

[20] We have found only one case holding that this application of the unfinished business doctrine with respect to contingency fee cases would limit a client's ability to hire the attorney of his or her choice. See *Welman* v. *Parker*, supra, 328 S.W.3d 457–58. We have not found any other authority following *Welman* on this point, and we agree with the Colorado Supreme Court that *Welman* "confuses the client's right to discharge an attorney or law firm at will with the fiduciary duties of attorneys toward each other and their law firm." *LaFond* v. *Sweeney*, supra, 343 P.3d 948–49.

Similarly, we disagree with the defendant's reliance on *Winston* v. *Guelzow*, supra, 356 Wis. 2d 756–58, which held that an attorney who had withdrawn from a joint representation of a client in a contingency fee matter was entitled only to "quantum meruit recovery for the value of the services provided before withdrawal," consistent with case law governing an attorney's compensation following the withdrawal for good cause or with client consent from a contingency fee matter. First, *Winston* is distinguishable because it did not involve the dissolution of a law firm, but rather, arose from joint representation of clients pursuant to an operating agreement between two separate law firms. Id., 751. Second, *Winston* lacks persuasive value because it does not address, or even cite, any of the unfinished business doctrine cases governing the dissolution of a law firm, and it has not been cited by any other state or federal courts addressing the distribution of contingency fees following a law firm dissolution.

[21] We acknowledge that the damages awarded by the trial court exceeded the strictly quantum meruit award, based on hours expended prior to dissolution, which the defendant seeks from us as an alternative form of appellate relief. We note, however, that the defendant does not contend that the trial court used an improper methodology to calculate damages owed for unjust enrichment. This methodology, which the defendant suggested during the fee dispute; see footnote 9 of this opinion; gave the defendant far more credit for his postdissolution efforts to resolve the cases than could have been ordered under various applications of the unfinished business doctrine.

Indeed, our sister state courts are somewhat divided with respect to the proper measure of such damages. Compare *LaFond* v. *Sweeney*, supra, 343 P.3d 941–42 (profit from contingency case was unfinished business belonging to law firm and must be distributed in accordance with law firm's profit sharing agreement, with partner retaining case "not entitled to additional compensation for his [postdissolution] work on the case"), *Ellerby* v. *Spiezer*, supra, 138 Ill. App. 3d 83–84 (holding that dissolved partnership was entitled to entire contingency fee, less completing attorney's overhead expenses, for matter pending at time of dissolution, and rejecting attorney's claim of entitlement to "the entire fees from those cases less a partnership claim for the reasonable value of services rendered prior to dissolution"), and *Beckman* v. *Farmer*, supra, 579 A.2d 639–40 (reducing fee share of former partner by attorneys' overhead expenses incurred in finishing matter and collecting contingency fee), with *Santalucia* v. *Sebright Transportation, Inc.*, supra, 232 F.3d 297–98 (applying New York law and concluding that pending contingency fee matters are firm property as of date of dissolution, to be valued by settlement value at date of dissolution with interest, "less that amount attributable to the lawyer's efforts after the firm's dissolution," with "portion of the fee collected by the law firm . . . distributed to the members in accordance with their pro rata interest in the firm"), and *Vowell & Meelheim, P.C.* v. *Beddow, Erben & Bowen, P.A.*, supra, 679 So. 2d 640 (upholding trial court's equitable adjustment to majority rule by awarding attorney who completed work on contingency case his share of fees under partnership agreement plus additional hourly compensation for work necessary to complete representation of client after he left firm). With no direct challenge to the trial court's damages methodology in this appeal, we need not consider the limits on a trial court's equitable discretion in awarding damages in disputes about contingency fees between former members of a dissolved law firm.

―――――――――――――――――――